

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2006

# Francois v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-4523

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Francois v. Atty Gen USA" (2006). *2006 Decisions.* Paper 996.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/996

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-4523

KESNER FRANCOIS,
Appellant

v.

*ALBERTO GONZALES, Attorney General;
*MICHAEL CHERTOFF, DEPARTMENT OF
HOMELAND SECURITY,
BUREAU OF IMMIGRATION & CUSTOMS
ENFORCEMENT;
MICHAEL J. GARCIA, Associate Secretary of
the Department of Homeland Security, Bureau
of Immigration & Customs Enforcement;
JOHN TORRES, District Director, Department
of Homeland Security-Bureau of Immigration
& Customs Enforcement; MICHAEL ABODE, Warden,
Middlesex County Jail, North Brunswick, New Jersey

*(Amended pursuant the F.R.A.P. 43(c))

On Petition for Review from the
Board of Immigration Appeals (A 36 470 712)

Initially docketed as an
Appeal from the United States District Court
for the District of New Jersey prior to the
enactment of the Real ID Act
(Civ. No. 04-cv-01961)
District Judge: Hon. William J. Martini

Argued: February 2, 2006

Before: McKEE, SMITH and VAN ANTWERPEN,
Circuit Judges

(Opinion filed: May 19, 2006)

REGIS FERNANDEZ, ESQ.  (Argued)
18 Green Street, Third Floor
Newark, NJ 07102
Attorney for Appellant

CHRISTOPHER J. CHRISTIE, ESQ.
United States Attorney
District of New Jersey
NEIL R. GALLAGHER, ESQ.
Assistant United States Attorney
RUDOLPH A. FILKO, ESQ.  (Argued)
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Attorneys for Appellees

2

OPINION

McKEE, Circuit Judge.

Kesner Francois appeals the district court's denial of the petition for a writ of habeas corpus that he filed pursuant to 28 U.S.C. § 2241, seeking relief from removal based upon alleged violations of the Convention Against Torture ("CAT"). For the reasons that follow, we will convert Francois' habeas petition into a petition for review, and deny his petition.

## I. FACTS AND PROCEDURAL HISTORY

Francois, a native and citizen of Haiti, was admitted to the United States as a lawful permanent resident on March 8, 1979. On May 8, 1992, Francois was convicted of possession of a controlled substance in state court. On October 29, 1997, he was convicted of aggravated assault in state court and sentenced to six years in prison.

Francois returned to Haiti three times in 2003. On August 10, 2003, Francois arrived at JFK International Airport in New York City and sought admission to the United States as a returning resident. Entry was denied, and he was taken into the custody of the Bureau of Immigration and Customs Affairs ("ICE") because his criminal convictions made him inadmissible. He was eventually served with a Notice to Appear, charging him with being a removable alien under provisions of the Immigration and Nationality Act ("INA") based upon his criminal convictions in state court.

3

In the removal proceedings that followed, Francois conceded removability, but applied for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture ("CAT"). In support of the latter claim, Francois alleged that, as a criminal deportee being returned to Haiti, he would be indefinitely imprisoned by Haitian authorities and tortured if returned. That allegation was supported by official and unofficial reports describing the conditions faced by criminal deportees and Haitian prisoners.[1] The immigration judge ("IJ") denied Francois' claim for asylum and withholding of removal, but granted relief under the CAT based upon the reported conditions in Haitian detention facilities. The Department of Homeland Security ("DHS") appealed the IJ's decision to the Board of Immigration Appeals, and the BIA reversed.

Francois thereafter filed a petition for habeas corpus in district court pursuant to 28 U.S.C. § 2241. The district court denied habeas relief concluding that Francois "failed to show more than isolated instances of torture occur in Haitian prisons." *Francois v. Ashcroft*, 343 F. Supp. 2d 327, 337 (D.N.J. 2004). This appeal followed.

## II. EFFECT OF REAL ID ACT

District courts had jurisdiction over habeas petitions

---

[1]These reports are discussed in some detail below. Francois relied upon these reports because he had never been imprisoned in Haiti, nor did he know anyone who had been.

alleging violations of the CAT when Francois filed his habeas petition in 2004. *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 222 (3d Cir. 2003). Review was "confined to questions of constitutional law and statutory interpretation." *Bakktrigher v. Elwood*, 360 F.3d 414, 424 (3d Cir. 2004). "[T]he broader species of review for substantial evidence and abuse of discretion typical of APA challenges" was "wholly out of bounds." *Id.* at 423. Accordingly, § 2241 habeas proceedings did "not embrace review of the exercise of discretion, or the sufficiency of the evidence." *Id*. at 420. Instead, the habeas court's jurisdiction was limited to "pure questions of law,"and to "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." *Id*. at 420.

However, "[t]his jurisdictional framework was radically overhauled . . . with the passage of the REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231." *Kamara v. Att'y Gen. of the United States*, 420 F.3d 202, 209 (3d Cir. 2005). Section 106(a) of the REAL ID Act, the provision we are concerned with, amended 8 U.S.C. § 1252(a)(2) of the INA by eliminating the district courts' habeas corpus jurisdiction (28 U.S.C. §§ 2241, 1361 and 1651) over final orders of removal in nearly all cases. Consequently, a petition for review filed in the appropriate court of appeals "is [now] the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e) of this section." REAL ID Act § 106(a)(1)(B), 8 U.S.C. § 1252(a)(4). Section 106(a)(1)(A)(iii) of the REAL ID Act also amended 8 U.S.C. § 1252 by adding a new provision, § 1252(a)(2)(D), which states:

5

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). With this amendment,

> Congress evidenced its intent to restore judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders. This now permits all aliens, including criminal aliens, to obtain review of constitutional claims and questions of law upon filing of a petition for review with an appropriate court of appeals.

*Kamara*, 420 F.3d at 210 (quoting *Papageorgiou v. Gonzalez*, 413 F.3d 356, 358 (3d Cir. 2005)).

In explicitly making these amendments retroactive,[2]

---

[2]"REAL ID Act § 106(b) provides that § 1252(a)(2)(D), 'shall take effect upon the date of the enactment of this division and shall apply to cases in which the final administrative order of removal . . . was issued before, on, or after the date of the enactment of this division.'" *Kamara*, 420 F.3d at 210.

6

Congress provided that habeas petitions filed under § 2241, which were pending in the district courts as of May 11, 2005, shall be transferred to the court of appeals "for the circuit in which a petition for review could have been properly filed . . . [and treated] as if it had been filed pursuant to a petition for review," with an exception not relevant to our discussion. REAL ID Act § 106(c). *Kamara*, 420 F.3d at 210,

As we recognized in *Kamara*, the "REAL ID Act is silent as to the exact procedural posture which faces us here, i.e. an appeal from a district court's habeas decision that is now pending before the court of appeals." 420 F.3d at 210 (citing *Bonhometre v. Gonzalez*, 414 F.3d 442 (3d Cir. 2005)). In *Kamara*, we affirmed Congress's intent "to provide aliens with one chance for judicial review in the court of appeals[.]" We therefore concluded that the appropriate way to treat a pending appeal from the district court's habeas petition, is to "vacate and disregard the [d]istrict [c]ourt's opinion and address the claims raised in [the] habeas petition as if they were presented before us in the first instance as a petition for review." 420 F.3d at 210 (citing *Bonhometre*, 414 F.3d at 445). Accordingly, we will consider Francois' claims as if they were first presented in a petition for review of the BIA's decision.

### III.  STANDARD OF REVIEW

Even though Francois' § 2241 habeas petition has been converted into a petition for review, our standard of review remains the same. "A review for 'constitutional claims or questions of law,' as described in § 106(a)(1)(A)(iii) of the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D), mirrors our previously enunciated standard of review over an alien's habeas petition."

7

*Kamara*, 420 F.3d at 211. Accordingly, in examining Francois' claims, "we are limited to pure questions of law, and to issues of application of law to fact, where the facts are undisputed and not the subject of challenge." *Id.* (citations and internal quotations omitted). We review the "BIA's legal decisions *de novo*, but will afford *Chevron* deference to the BIA's reasonable interpretations of statutes which it is charged with administering." *Id*. (citations omitted).

## IV.  THE CONVENTION AGAINST TORTURE

On October 21, 1998, the President signed into law the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, Div. G., 112 Stat. 2681-761, authorizing the implementation of Article 3 of the Convention Against Torture[3] and requiring implementing regulations to be promulgated by the applicable agencies within 120 days. As directed, the Department of Justice, which then included the Immigration and Naturalization Service, promulgated regulations setting forth the procedures by which aliens could obtain relief under the CAT. *See* 64 Fed. Reg. 8478, codified at 8 C.F.R. §§ 208.16(c), 208.17 & 208.18(a).

8 C.F.R. § 208.18(a)(1), the regulatory definition of

---

[3]Article 3 of the CAT states: "No State Party shall expel, return ("*refouler*") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Art. 3(1), S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85.

torture, mirrors the definition of torture contained in Article 1 of the CAT, which is then clarified by six additional provisions, several of which are relevant here:

> (a)(1) Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

> (a)(2) Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that does not amount to torture.

> (a)(3) Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions.

> (a)(4) In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from:

9

(i) The intentional infliction or threatened infliction of severe physical pain or suffering;

(ii) The administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(iii) The threat of imminent death; or

(iv) The threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration of mind altering substances or other procedures calculated to disrupt profoundly the sense or personality.

(a)(5) In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture.

The Department of Justice also promulgated regulations specifying the elements and the burden of proof for a CAT

claim. Section 208.16(c)(2) provides that "[t]he burden of proof is on the applicant for withholding of removal[4] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." If an applicant establishes that he "more likely than not would be tortured" upon removal to his home country, withholding or deferral of removal is mandatory. 8 C.F.R. §§ 208.16(c)(3) and (4). The objective evidence to be considered in evaluating a CAT claim includes "[e]vidence of past torture inflicted upon the applicant;" "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal;" and "[o]ther relevant information regarding conditions in the country of removal." *See* 8 C.F.R. § 208.16(c)(3); *see also* 8 C.F.R. § 208.17(a).

## V. DISCUSSION

Francois contends that he is entitled to CAT relief because, as a criminal deportee, he will be indefinitely detained

---

[4]Applicants for CAT relief can seek either deferral of removal or withholding of removal. Regulations for withholding of removal are found at 8 C.F.R. § 208.16 and the regulations for deferral are found at § 208.17. "However, the general standards of eligibility for each are identical, i.e., a requirement that an alien establish that future 'torture' is 'more likely than not.'" *Auguste v. Ridge*, 395 F.3d 123, 134 n. 8 (3d Cir. 2005).

11

in a Haitian prison[5] upon his return, and he will be forced to endure appalling prison conditions that are tantamount to "torture." As noted earlier, this claim rests only upon generalized prison conditions rather than any specific treatment that would be intentionally directed at him. In support of his claim, Francois cited: (1) the U.S. State Department's *Country Report on Human Rights Practices – Haiti 2002* ("*2002 Country Report*"); (2) the Human Rights Watch's *World Report 2003 – Haiti* ("*World Report 2003*"); and (3) the INS Resource Information Centers' *Haiti – Information on Conditions in Haitian Prisons and Treatment of Criminal Deportees* ("*Conditions in Haitian Prisons*").

Our assessment of these country reports is substantially the same as district court's. As we noted above, the district court's opinion has been vacated by operation of the REAL ID Act. However, since that court's assessment is consistent with our own, and since the government does not challenge the district court's findings, we will set forth substantial portions of the district court's summary of those reports in the interest of judicial economy.

The district court described the essential elements of these reports as follows:

> Criminal deportees who are removed to Haiti are routinely imprisoned. The Haitian authorities do

---

[5]The parties stipulated that Francois would likely be detained if he was removed to Haiti.

12

> this as a preventive measure to prevent returning criminals from further exacerbating the country's already high levels of crime. U.S. criminal deportees are incarcerated in the National Penitentiary with the general prison population. They are held indefinitely, with one exception.

343 F. Supp. 2d. at 328-29. Although Haitian authorities detain returning aliens such as Francois "indefinitely," the district court explained that:

> [T]he reports use the word "indefinitely" not to connote that the criminal alien will never be released, but to suggest that the person will be held without notice of when they will be released. On average, it appears that most detained deportees were released after several months of imprisonment, although there were instances where people were detained up to 10 months.

*Id.* at 329 n.2. If the deportee has a close family member, then the deportee may be released approximately three months after incarceration. *Id.* at 329. However, this exception is narrow.

> Criminal deportees are released from the National Penitentiary after a close family member presents proof of identification as well as proof of relationship to the deportee and must swear in writing that they will take responsibility for the deportee upon release and further, that they agree that in the event that the deportee is alleged to

13

commit a crime, and is not apprehended, the responsible person will be subject to arrest until such a time as the deportee is apprehended. In 2001, 4-5 families have been subjected to arrest, with one family member imprisoned for three months until the police were able to arrest the deportee. This deters some families from coming forward or following through with the process for releasing their loved ones from detention when first deported to Haiti.

*Id*. at 329 (quoting *Conditions in Haitian Prisons* at 4). Moreover, it appears that "not just any family member can claim responsibility for the deportee. Authorities often require that a close relative, such as a parent, come forward. In short, detention of a criminal deportee can last anywhere from a short duration to an indefinite duration." *Id*.

The conditions of Haitian prisons are atrocious. Although the prison population of the National Penitentiary was reduced to 1,700 prisoners in 2002, it remains overcrowded with extremely poor and antiquated facilities. Despite recent improvements in prison administration, prisoners and detainees continue to suffer from a lack of basic hygiene, malnutrition, poor quality health care, and, in some facilities, 24-hour confinement. Most prisons periodically suffered from lack of water, especially in the provinces. Many prisoners also suffered from diseases, including 'preventable diseases such as beriberi, AIDS, and

14

> tuberculosis. Human rights groups, such as the
> International Committee of the Red Cross and the
> Haitian Red Cross, were freely permitted to enter
> prisons and monitor conditions, and assist
> prisoners and detainees with medical care, food,
> and legal aid.

*Id.* (footnote, internal quotation marks, bracket and citations omitted).

The district court also noted that, in addition to "those abysmal conditions, prisoners are also grossly mistreated by prison officials." *Id.* In quoting the State Department's *Country Report on Human Right's Practices – Haiti 2001*, the district court wrote:

> Police mistreatment of suspects at both the time
> of arrest and during detention remains pervasive
> in all parts of the country. Beatings with fists,
> sticks, and belts is by far the most common form
> of abuse. However, international organizations
> documented other forms of mistreatment, such as
> burning with cigarettes, choking, hooding, and
> kalot marassa (severe boxing of the ears, which
> can result in eardrum damage). Those who
> reported such abuse often had visible injuries
> consistent with the alleged maltreatment. There
> were also isolated allegations of torture by
> electric shock. Mistreatment also takes the form
> of withholding medical treatment from injured
> jail inmates. Police almost never are prosecuted

15

for the abuse of detainees.

*Id*. at 329-30.

We therefore have no trouble concluding that the conditions Francois will likely face in Haitian prisons following his removal to Haiti are inhumane and deplorable. That does not, however, end our inquiry, because it does not establish that those conditions constitute "torture" under the CAT. That inquiry is controlled by our decision in *Auguste v. Ridge*, 395 F.3d 123 (3d Cir. 2005), and we conclude that *Auguste* precludes granting Francois relief.

Auguste, like Francois, was a Haitian alien facing removal after being convicted of crimes in the United States. Auguste claimed that his entire family lived in the United States, just as Francois does. Auguste also based his claim for relief under the CAT upon his assertion that he would be "indefinitely detained upon his arrival in Haiti in prisons that are notorious for their brutal and deplorable conditions that have been compared to those existing on slave ships." 395 F.3d at 128. However, Francois, like Auguste, does not claim that he was tortured in Haiti, nor does Francois allege any kind of coercion, force, cruelty or brutality would be personally directed at him if he were returned to Haiti. Rather, Francois' claim for relief rests solely upon "the likelihood that he would be detained upon arrival and subject to harsh prison conditions." *Id*. at 134. We rejected Auguste's attempt to equate harsh prison conditions with "torture" because conditions of confinement, without more, do not constitute torture under the CAT. Francois' claim is factually indistinguishable from the one we rejected in *Auguste*.

16

Accordingly, we hold that Francois is not eligible for relief under the CAT.

Francois attempts to avoid the impact of *Auguste* by relying upon our discussion of the CAT in *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir. 2003). Francois argues that his claim satisfies the intent element for torture as set forth in *Zubeda.* There, in discussing the intent required of persecutors under the CAT, we stated: "the Convention [Against Torture] simply excludes severe pain or suffering that is the unintended consequence of an intentional act." *Id.* at 473. However, Francois' reliance on *Zubeda* ignores that our entire discussion there was in the context of a woman who alleged that she would be raped if returned to her native country, and we had to determine if that allegation could support relief under the CAT on the record there.

In *Zubeda*, we granted a petition for review, vacated the BIA's denial of relief under the CAT, and remanded for further proceedings before the BIA. However, the IJ had found that Zubeda had established a likelihood that she would be subjected to acts of violence specifically directed against her including the likelihood that she would be raped if returned to the Democratic Republic of the Congo.

In explaining why Auguste had not satisfied his burden under the CAT, we noted that "[t]he District Court concluded that 'there must be some sort of underlying intentional direction of pain and suffering against a particular petitioner, more so than simply complaining of the general state of affairs that constitute conditions of confinement in a place, even as unpleasant as

17

Haiti.'" 395 F.3d at 137.  Given our discussion in *Auguste*, we conclude that the generalized allegations of prison conditions Francois advances here do not rise to the level of "torture."[6]

## VI.  CONCLUSION

For all of the above reasons, we will vacate the district court's opinion and deny Francois' petition for review of the decision of the BIA.

---

[6] We do not, of course, suggest that conditions of confinement can never satisfy the burden a petitioner must establish to qualify for relief under the CAT. We hold only that Francois has not satisfied that burden on this record.

18