

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2006

# Azuakoemu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3590

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Azuakoemu v. Atty Gen USA" (2006). *2006 Decisions.* Paper 464.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/464

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 05-3590

————

OKECHUKWU AZUAKOEMU,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

————

Petition for Review of the Order
of the Board of Immigration Appeals
(A35-201-484)
Immigration Judge: Walt Durling

————

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2006

Before: SCIRICA, Chief Judge, SLOVITER, and BARRY, Circuit Judges

(Filed: September 12, 2006)

OPINION

————

SLOVITER, Circuit Judge.

Okechukwu Azuakoemu, a citizen of Nigeria, petitions for review of the decision of the Board of Immigration Appeals ("BIA") which vacated the determination by an Immigration Judge ("IJ") that he was entitled to deferral of removal under the Convention Against Torture ("CAT"). The Government argues that this court lacks jurisdiction over the petition and that if we take jurisdiction we should deny Azuakoemu's petition for review.

I.

As we write primarily for the parties, we state the facts only briefly. Azuakoemu is a thirty-four-year old native and citizen of Nigeria who entered the United States as a child in December of 1979. Before he was ordered deported, he was a lawful permanent resident. His criminal history is unfortunately extensive, beginning in August of 1994 when he was convicted in the Philadelphia Court of Common Pleas of possession of a controlled substance (cocaine) in violation of 35 Pa. C.S.A. § 780-113(a)(16), possession with intent to distribute in violation of 35 Pa. C.S.A. § 780-113(a)(30), carrying a firearm on a public street in Philadelphia in violation of 18 Pa. C.S.A. § 6108, and criminal conspiracy in violation of 18 Pa. C.S.A. § 903. Two weeks later, he was convicted of two counts of possession of a controlled substance (cocaine), two counts of possession with intent to distribute, and two counts of criminal conspiracy.

In December of 2000, Azuakoemu again found himself in a Pennsylvania criminal court. This time, he was convicted of robbery in violation of 18 Pa. C.S.A. § 3701,

aggravated assault in violation of 18 Pa. C.S.A. § 2702, carrying a firearm without a license in violation of 18 Pa. C.S.A. § 6106, carrying a firearm on a public street in Philadelphia in violation of 18 Pa. C.S.A. § 6108, theft in violation of 18 Pa. C.S.A. § 3921, receiving stolen property in violation of 18 Pa. C.S.A. § 3925, simple assault in violation of 18 Pa. C.S.A. § 2701, and criminal conspiracy in violation of 18 Pa. C.S.A. § 903.

The United States Bureau of Immigration and Customs Enforcement ("ICE" or "Government") commenced removal proceedings against Azuakoemu on August 13, 2003, charging him with removability pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii), (a)(2)(B)(I)& (a)(2)(C), as an alien convicted of an aggravated felony, a controlled substances violation, and a firearms law. Azuakoemu does not dispute that he has been convicted of offenses satisfying the definition of "aggravated felony." See 8 U.S.C. § 1101(a)(43)(B), (F), (G) & (U). Azuakoemu conceded removability before the IJ. Because of his criminal convictions, Azuakoemu is ineligible for asylum, withholding of removal, and withholding of removal under the CAT. See 8 U.S.C. § 1158(b)(2)(B); 8 C.F.R. 208.16(d)(2). He petitioned the IJ for deferral of removal under the CAT. 8 C.F.R. § 208.17(a).

At the hearing held by the IJ on May 10, 2004, Azuakoemu testified that he is fearful that if he returns to Nigeria, he will be detained, prosecuted, imprisoned, and tortured under Decree 33, a Nigerian law that makes it a crime for returning Nigerians to have been convicted of crimes, in particular drug crimes, in a foreign country.

3

Azuakoemu also presented the testimony of Abdul Salau, a lecturer on contemporary Africa at Temple University, who testified that he had visited Nigeria several times for personal and professional reasons, and that he was well-informed about current conditions in Nigeria through professional journals, contacts with journalists and other experts, and the news media. In order to prepare for the hearing, he had also consulted with a Nigerian public defender who defended criminal deportees subject to prosecution under Decree 33, and a Nigerian drug enforcement officer charged with investigating and prosecuting cases under Decree 33. He had also once observed the trial of a defendant prosecuted under Decree 33.

The IJ found that Salau's credentials fell short of the level required to be qualified as an expert on Nigeria's prisons or criminal justice system. Nonetheless, the IJ allowed him to testify because of his relevant personal and professional experience. Salau testified that according to his conversation with the Nigerian drug enforcement officer, deportees convicted of drug crimes abroad were interviewed and detained for violating Decree 33 when they returned to Nigeria. Some detainees were held for up to three years awaiting trial although by law detainees must be charged and prosecuted within eight months. Salau testified that the prison conditions were poor due to overcrowding, poor sanitation, and inadequate food, and that detainees were subject to routine mistreatment that, in his opinion, rose to the level of torture.

Salau testified that Azuakoemu's situation would be exacerbated by his inability to speak any native Nigerian languages, that he would incite jealousy in other prisoners and

4

the prison guards because it is considered very good fortune to have had an opportunity to live in the United States, and that Azuakoemu's lack of family in Nigeria would cause him problems because prisoners in Nigeria who have family members who can provide extra food and medicine, and pay bribes to guards and prison authorities, fared much better in Nigerian prisons. According to Salau, corruption is endemic in the Nigerian criminal justice system–he had personally witnessed a defendant in a Decree 33 trial bribe a judge in order to avoid conviction. Azuakoemu also presented voluminous documentary evidence about general country conditions and prison conditions in Nigeria, including reports from Amnesty International, Country Reports from the U.S. Department of State, and periodical articles. The IJ determined that Salau's testimony was credible.

In his decision, the IJ found that Azuakoemu would face detention for eight months to three years awaiting prosecution under Decree 33 if returned to Nigeria, that Azuakoemu would face "abysmal and life-threatening jail" conditions in Nigeria in line with other detainees in Nigeria, and noted that the reports from Amnesty International and Human Rights Watch had documented life-threatening prison conditions in Nigeria, and a high incidence of torture and physical and mental abuse. App. at 87. The IJ found that given that Nigeria had the "dubious distinction of maintaining one of the world's worst prison systems," humane treatment of prisoners was an "impossibility" and the use of torture against Azuakoemu was "likely." App. at 88. Accordingly, the IJ concluded that Azuakoemu had proven by substantial evidence that he was likely to be tortured if deported to Nigeria, and was entitled to deferral of removal under the CAT. 8 C.F.R. §

5

208.17.

The Government appealed the IJ's decision to the BIA, which vacated the IJ's decision and ordered Azuakoemu's removal from the United States to Nigeria. The BIA held that although it was not error to admit Salau's hearsay testimony, his opinions about whether Decree 33 detainees would suffer torture could not form the basis for granting Azuakoemu's CAT claim because Salau did not qualify as an expert. Although the BIA agreed that Azuakoemu would likely be detained if returned to Nigeria, it found that Azuakoemu had not alleged sufficient evidence that he would be subject to torture or to prison conditions so poor as to amount to torture. The BIA found the testimony and documentary evidence insufficiently specific to demonstrate a likelihood of torture. The BIA found that the Nigerian government had no official policy of torturing deportees, and that "[i]nhumane treatment due to poor prison conditions does not necessarily constitute 'torture' within the meaning of the CAT," and "[i]solated instances of mistreatment that may rise to the level of torture are also insufficient to establish the burden necessary for CAT relief." App. at 11.

The BIA concluded:

> Due to the witness' vague testimony as to his conversation with the [Nigerian drug enforcement] officer, the lack of details of defense attorney's clients' experiences with torture in the record, and the improper use of a lay witness's opinion on matters he is not an expert to, we find the witness's testimony, in addition to the background evidence in the record, is insufficient to establish that it is more likely than not the respondent will be tortured once he is detained for violating Decree No. 33.

6

App. at 11.  The BIA vacated the IJ's grant of deferral of removal under the CAT, ordering Azuakoemu removed to Nigeria.

II.

In his petition for review, Azuakoemu argues that the BIA did not apply the correct standard of review and failed to examine all of the relevant evidence in evaluating his CAT claim, in violation of CAT's implementing regulations and his due process rights.  8 C.F.R. § 208.16(c)(3).  He argues that the BIA required him to demonstrate with a near certainty that he was likely to be tortured, for example, by demonstrating that the Nigerian government had a policy of torturing prisoners, instead of applying the "more likely than not" standard prescribed by the regulations.  Appellant's Br. at 16; 8 C.F.R. §§ 208.16(c)(4), 208.17(a).  He also notes that cases cited by the BIA demonstrate that prison conditions rising to the level of "deliberate vicious acts" may constitute torture, and that the prison conditions in Nigeria meet this standard.  Appellant's Br. at 16-17 (citing In re J-E-, 23 I&N Dec. 291 (BIA 2002)).  Accordingly, he argues that the IJ correctly determined that he had met his burden of proof, and his decision should have been upheld.

The Government asserts that this Court does not have jurisdiction to review Azuakoemu's petition.  The basis for this contention is 8 U.S.C. § 1252(a)(2)(C), which provides that the federal courts "shall not have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain criminal offenses, including controlled substances violations and aggravated felonies.

<u>See</u> 8 U.S.C. § 1182(a)(2)(A)(i)(II); 8 U.S.C. § 1227(a)(2)(A)(iii). The very next subsection, § 1252(a)(2)(D), however, exempts questions of law and constitutional claims from the effects of this jurisdiction stripping provision. The Government argues that even though Azuakoemu has framed his petition for review as a legal question, he is really asking this Court to reweigh the evidence, which we do not have jurisdiction to do. In the alternative, it argues that even if this Court does have jurisdiction, Azuakoemu has not satisfied his burden to demonstrate eligibility for relief under the CAT.

Whether the BIA applied the correct standard of review to Azuakoemu's petition and considered all the record evidence are legal questions. <u>Smriko v. Ashcroft</u>, 387 F.3d 279, 295 (3d Cir. 2004). Aliens facing removal are entitled to due process. <u>Abdulai v. Ashcroft</u>, 239 F.3d 542, 549 (3d Cir. 2001). Due process requires that the deciding body (1) engage in factfinding based on the entire record produced; (2) make an individualized determination of the alien's interests; and (3) allow the alien to make arguments on his or her behalf. <u>Id</u>. Azuakoemu's petition alleges only that the BIA did not consider all of the relevant evidence, which falls under its duty to consider the entire record.

Azuakoemu produced a voluminous record in his immigration proceedings, most of which consists of reports regarding country conditions in Nigeria, Nigeria's drug policies, and periodical articles documenting poor treatment of Nigerian prisoners. Agency action is entitled to a presumption of regularity, and we will not reverse the BIA for failing to discuss each of these documents in detail or mention every relevant fact contained in them. <u>Kamara v. Att'y Gen.</u>, 420 F.3d 202, 212 (3d Cir. 2005). Azuakoemu

8

has the burden to demonstrate that the BIA failed to review the record, and he has not met that burden here. Id. The BIA commented on the general content of the documents: "The background evidence reports that army, police, and security forces in Nigeria regularly beat detainees . . . . Prison conditions in Nigeria remain among the worst in the world . . . ." App. at 11. But the BIA observed that none of the documents introduced pertained to Azuakoemu's individual situation or provided specific information about Decree 33 detainees apart from other prisoners. Accordingly, we will not reverse the BIA on the grounds that it failed to consider relevant evidence in the record.

Azuakoemu also alleges that the BIA applied the wrong standard of review to his claim, requiring a higher showing than "more likely than not" that he would be tortured if returned to Nigeria. See 8 C.F.R. § 208.16(c)(2). He argues that the BIA required him to prove that the Nigerian government had an official policy of torturing Decree 33 defendants in order to prevail on his CAT claim. He also alleges that the BIA erred in holding that poor prison conditions could not rise to the level of torture.

These arguments misconstrue the BIA's decision. The BIA did not require Azuakoemu to prove that Nigeria had an official policy of torturing prisoners, nor did it hold that poor prison conditions could never rise to the level of torture. The BIA cited the fact that the Nigerian government did not have a policy of torturing prisoners among other factors in order to distinguish Azuakoemu's case from In re G-A-, 23 I&N Dec. 366 (BIA 2002), in which it held that an Iranian deportee with drug convictions in the United States had established "that severe instances of mistreatment are so pervasive in Iranian

9

prisons as to establish a probability that a detainee with the respondent's characteristics will be subject to torture." Id. at 372; App. at 11. It also cited the correct legal standard for CAT claims several times in its decision. See App. at 11 (holding that "the witness's testimony, in addition to the background evidence in the record, is insufficient to establish that it is more likely than not the respondent will be tortured"). Given the presumption that agency action complies with the law, we hold that Azuakoemu has not met his burden to prove that the BIA applied an incorrect standard of review to his CAT claim.

Even if we take the facts in the record regarding treatment of Decree 33 detainees and prison conditions in Nigeria as undisputed, the BIA's application of the "likelihood of torture" standard was not erroneous as a matter of law. Francois v. Gonzales, 448 F.3d 645, 648 (3d Cir. 2006) (holding that review for legal error under § 1252(a)(2)(D) encompasses review of BIA's application of law to undisputed facts). Azuakoemu's case is similar to Auguste v. Ridge, 395 F.3d 123 (3d Cir. 2005), in which a Haitian alien's claim for relief under the CAT was rejected despite a similar showing that he would be detained, possibly indefinitely, upon return to Haiti because of criminal activities in the United States, and that Haitian prisons were notorious for their deplorable and inhumane conditions. Id. at 153–54. See id. at 154 ("In effect, Auguste is complaining about the general state of affairs that exists in Haitian prisons. The brutal conditions are faced by all prisoners and are not suffered in a unique way by any particular detainee or inmate."); Francois, 448 F.3d at 651–52. In light of the BIA's conclusion that the background materials were insufficient to establish that all Nigerian prisoners were likely to be

10

tortured, and Azuakoemu's failure to present specific evidence about the treatment of deportees detained under Decree 33 (beyond Salau's inadmissible statements of opinion that persons detained under Decree 33 were subject to torture), the BIA did not err as a matter of law in denying Azuakoemu's claim for deferral of removal under the CAT.

## III.

For the foregoing reasons, the petition for review is denied.

11