OPINION OF THE COURT
McKEE, Circuit Judge.
Mohammad Ghaziaskar petitions for review of a final order of removal entered by *763 the Board of Immigration Appeals based on the Immigration Judge’s determination that a prior criminal conviction made Gha-ziaskar statutorily ineligible for withholding of removal to Iran. Ghaziaskar also challenges the BIA’s denial of his motion to defer removal under the Convention Against Torture (“CAT”). For the reasons that follow, we will dismiss the petition as to his challenge to the BIA’s denial of eligibility for withholding based on his criminal conviction, but grant the petition and remand to the BIA for further proceedings pertinent to his CAT claim.
I.
Because we write primarily for the parties, it is not necessary to recite the facts or history of this case except as may be helpful to our brief discussion. Ghaziaskar first challenges the BIA’s final order of removal affirming the IJ’s ruling that he is ineligible for withholding of removal because of his criminal conviction for drug trafficking. Ghaziaskar was convicted of the use of a telephone to facilitate distribution of opium, in violation of 21 U.S.C. § 843(b).[1] Ghaziaskar argues that his conviction was not a “particularly serious crime” and therefore did not disqualify him for withholding of removal. Ghazias-kar also argues that the BIA erred by concluding that he is not likely to be tortured if returned to Iran based upon his past political opposition to the Iranian revolutionary government, his drug-related criminal convictions, and his conversion to Christianity.
II.
Ghaziaskar argues that he should not be disqualified for a grant of withholding of removal to Iran because of his drug-related conviction. The Immigration Judge disagreed and concluded that Ghazi-askar was not eligible for asylum because he had been convicted of use of a telephone to facilitate distribution of opium in violation of 21 U.S.C. § 843(b).
To be eligible for a grant of withholding of removal, an alien must show that his “life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group or political opinion.” 8 U.S.C. § 1231(b)(3)(A). Aliens are disqualified from receiving such withholding of removal, however, if they have been convicted of a “particularly serious crime.” 8 U.S.C. § 1231(b)(3)(h). An alien who was convicted of an “aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime.” 8 U.S.C. § 1231(b)(3). Where an alien is convicted of a crime with a lesser sentence, the Attorney General is not precluded from determining that the crime is nonetheless a particularly serious crime. Id.
Ghaziaskar was convicted of using a telephone to facilitate the distribution of opium, a crime with a maximum sentence of four years. 21 U.S.C. § 846 (1983). He was also convicted of an aggravated felony involving fraud or deceit, but its maximum sentence did not reach the five year threshold in 8 U.S.C. § 1231(b)(3)(iv). We must therefore determine if the BIA erred in affirming the IJ’s ruling that Ghazias-kar’s conviction is particularly serious. In resolving that issue, we remain mindful that any drug trafficking crime is presumed to be a particularly serious offense. Matter of Y-L, 23 I. & N. Dec. 270, 276-77 (BIA 2002). While we presume that a drug trafficking crime is a “particularly *764 serious crime,” an alien may overcome this presumption by satisfying the six criteria set forth in Matter of Y-L, 28 I. & N. Dee. at 276-77. These criteria are:
(1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

Id.

Here, the government represents without contradiction that Ghaziaskar’s offense involved use of a telephone as part of his participation in a drug transaction involving a $60,000 purchase of illegal narcotics. Respondent Br. at 26. That in no way undermines the presumption he must overcome. Ghaziaskar’s task of overcoming that presumption is also not advanced by his failure to address five out of the six YL criteria. Rather, he merely argues that his involvement was peripheral. Even assuming arguendo that it was, peripheral involvement in what certainly appears to be a particularly serious crime does not address any of the remaining Y-L factors.
Ghaziaskar argues that the IJ improperly looked beyond the specific crime he plead guilty to and focused instead on the more serious crimes he was indicted for. Petitioner Br. at 22. It is clear that the IJ relied partially on charges in the indictment in concluding that Ghaziaskar’s involvement in the drug transaction was “more than peripheral; he was an active participant in the scheme.” App. at 241. However, given Ghaziaskar’s failure to address the Y-L factors, we need not decide whether the IJ’s reliance on facts beyond Ghaziaskar’s plea agreement warrants relief. On this record, we conclude that the BIA did not err in affirming the IJ’s decision that Ghaziaskar is disqualified from receiving the benefit of withholding of removal.
III.
Ghaziaskar’s challenge to the BIA’s denial of his motion to defer removal under CAT, is more troublesome. He argues that he established that it is more likely than not that he would be tortured by the Iranian government (or its agents) if he is removed to his home country. CAT prohibits the removal of an alien who establishes that “it is more likely than not” that he will be tortured by or at the instigation of the government if removed to his home country. 8 C.F.R. § 208.18(a)(1); Francois v. Gonzales, 448 F.3d 645, 649 (3d Cir.2006). Torture is defined as “an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment.” 8 C.F.R. § 208.18(a)(2). CAT requires decision-makers to consider all relevant evidence, including
(i) evidence of past torture inflicted upon the applicant; (ii) evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) other relevant information regarding conditions in the country of removal.
8 C.F.R. § 208.18(c)(3).
An IJ’s adverse credibility determination is “reviewed for substantial evidence.” Benshaj v. Ashcroft, 378 F.3d 314, 322-23 (3d Cir.2004). We uphold an adverse credibility determination unless “any reasonable adjudicator would be compelled to *765 conclude to the contrary.” Cao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002). An “alien’s credibility, by itself may satisfy his burden, or doom his claim.” Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir.2003).
Here, the IJ concluded that there were “enormous gaps in the respondent’s credibility.” App. at 28a. The IJ did not believe that Ghaziaskar’s participation in the radio program, the “Persian Hour,” was anti-Khomeini and anti-government because the broadcast occurred after the revolution. Additionally, the IJ discredited Ghaziaskar’s explanation of why he has two passports. App. at 29a. However, focusing on any discrepancy regarding the passport ignores the seriousness of his claim and the potential for harm that may await him in Iran if Ghaziaskar’s involvement with the radio program is viewed with disfavor by the Iranian regime. To his credit, the IJ conceded that Ghazias-kar’s involvement with the Persian Hour “may in fact have been what he said it was.” App. at 31a. However, the IJ also dismissed the seriousness of Ghaziaskar’s involvement with the radio program because it occurred before the overthrow of the Shah’s regime.
Ghaziaskar argues that his conversion to Christianity could also subject him to torture. He testified that he attended Catholic services and took communion along with his wife and children. The IJ disputed his “sudden conversion to Christianity,” because the IJ believed that Ghaziaskar would not have been able to take communion without being a member of the church. App. at 31a. However, that conclusion is clearly based upon the IJ’s understanding of practices of Christian churches he is familiar with. There is nothing in the record to suggest that Christian churches in Iran adhere to the strict protocols that exist in some churches in the United States. The IJ was also concerned that Ghaziaskar could not provide the name of pastors or churches that he attended. Id. However, we believe that the IJ’s apparent belief that Ghaziaskar would not have been able to take communion in a Catholic church was erroneous. Although a non-Catholic is not supposed to take communion in the Catholic Church, Ghaziaskar certainly could have received communion in any number of Catholic churches, even though he is not Catholic, not because it is acceptable but, because the priest did not know he was not Catholic.
Ghaziaskar argues that the IJ and the BIA both “failed to consider the country conditions in Iran.” Pet. Br. at 29. Specifically, Ghaziaskar points to “overwhelming evidence regarding the prevalence of torture in Iran contained in the 2002 Country Reports” that the BIA did not adequately consider. Id. The 2002 Country Reports point to (1) “systematic abuses” of human rights in Iran including summary executions and the widespread use of torture, J.A. 304a-05a; (2) Iranians returning from abroad are subject to searches and extensive questioning for evidence of anti-government activities abroad, J.A. 319a; (3) Iran’s judiciary is “subject to government and religious influence resulting in lack of due process and fair trials, J.A. 309-a-10a; and (4) there are “numerous credible reports that security forces and prison personnel continue to torture detainees and prisoners, J.A. 307a.
This record does not establish that the IJ or BIA adequately considered conditions in Iran before reaching its conclusion that Ghaziaskar failed to establish that it was more likely than not that he would be tortured upon his return to Iran. We also think it appropriate to take judicial notice of the fact that current tensions in Iran would only exacerbate what this record establishes as an already shameful record of respecting human rights. We think that this case can best be resolved by *766 allowing the BIA an opportunity to more closely consider relevant Country Reports in assessing Ghaziaskar’s claim. We also think that the BIA should give consideration to the possibility that it would be more likely than not that his involvement in the radio program, his return from the United States, and his claimed conversion to Christianity could well subject him to the kind of intentional mistreatment that the CAT was intended to protect against.
We therefore remand for the BIA’s reconsideration of Ghaziaskar’s petition for relief under the CAT.
IV.
For the aforementioned reasons, we will dismiss Ghaziaskar’s petition in part, and remand it in part for further proceedings consistent with this opinion.

. This is an aggravated felony involving fraud or deceit where the loss to the victim exceeded $10,000.