

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2004

# Wang v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-3057

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Wang v. Atty Gen USA" (2004). *2004 Decisions.* Paper 656.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/656

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

_____

NO. 03-3057

_____

NEN YING WANG,

Petitioner

v.

JOHN ASHCROFT, Attorney General
of the United States; JAMES ZIGLAR,
Commissioner, U.S. Immigration and
Naturalization Service,

Respondents

_____

Petition for Review of an Order
of the Board of Immigration Appeals
(A78-420-250)

_____

Submitted Under Third Circuit LAR
34.1(a) May 3, 2004

Before: SLOVITER, FUENTES and
BECKER, Circuit Judges

(Filed: May 19, 2004)

_____

Joseph C. Hohenstein
Nationalities Service Center
Philadelphia, PA 19107

Attorney for Petitioner

Peter D. Keisler
     Assistant Attorney General
     Civil Division
David V. Bernal
     Assistant Director
     Office of Immigration Litigation
M. Jocelyn Lopez Wright
     Senior Litigation Counsel
     Office of Immigration Litigation
U.S. Department of Justice
Washington, DC 20044

     Attorneys for Respondent

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Petitioner Nen Ying Wang, a citizen of China, seeks review of the order of the Board of Immigration (BIA) vacating the decision of the Immigration Judge (IJ) that had granted Wang's application for withholding of removal under the Convention Against Torture (CAT) and section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681, 2681-822 (1998) (FARRA). Wang contends that the BIA violated FARRA's implementing regulations when it undertook de novo review of his case, rather than reviewing it for clear error, and failed to defer to the IJ's factual determination that Wang was more likely than not to face torture if returned to China. Wang seeks reversal of the BIA's decision or a remand to the BIA with instructions regarding the proper standard of review. For the reasons set forth below,

we will deny the Petition for Review.

## I.

Wang came to the United States in 2000 at the age of sixteen without a valid visa or entry documents. The Immigration and Naturalization Service (INS) immediately detained him at Kennedy Airport upon arrival because he presented a passport that was not lawfully issued to him. The INS commenced removal proceedings and placed him in a juvenile detention center. Although Wang conceded removability, in accordance with 8 C.F.R. section 1208.16 (c)(2) (2004), Wang sought protection under the CAT on the ground that it was "more likely than not" that he would be tortured by the Chinese government if removed to China because he left China illegally. On May 15, 2001, after an evidentiary hearing, the IJ granted Wang's request for withholding of removal pursuant to the CAT. On June 16, 2003, the BIA vacated the IJ's order and ordered Wang to be removed to China. Wang timely filed this Petition for Review.

## II.

We have jurisdiction to review the BIA's final order of removal under INA Section 242, 8 U.S.C. § 1252, and the BIA's denial of Wang's claim for CAT protection under FARRA §§ 2242(b), (d). We review the BIA's legal determinations de novo, subject to established principles of deference, Chevron v. Nat. Res. Def. Council, 467 U.S. 837, 844 (1984), but defer to the BIA's factual findings unless "any reasonable adjudicator would be compelled to conclude to the contrary."

INA § 242 (b)(4)(B), 8 U.S.C. §1252(b)(4)(B).

Wang contends that the BIA committed error when it undertook a de novo review of the record because 8 C.F.R. section 1003.1(d)(3)(1) prohibits the BIA from engaging in a "de novo review of findings of fact determined by an immigration judge" and directs that the BIA shall only review the IJ's findings for clear error. 8 C.F.R. § 1003.1(d)(3)(1). However, section 1003.1(d)(3)(1), on which Wang relies, does not apply to "appeals filed before September 25, 2002." 67 Fed. Reg. at 54,905 (codified at 8 C.F.R. § 1003.3(f)). Because the INS filed its appeal with the BIA on May 17, 2001, more than one year before the September 25, 2002 deadline, section 1003.1(d)(3)(1) is inapplicable in this case. The BIA thus did not err in conducting a de novo review.

Wang argues in the alternative that we should eschew the traditional substantial-evidence standard, bypass the BIA's decision, and review the IJ's decision. Wang urges us to do so on the grounds that the BIA allegedly misapprehended the proper burdens of proof and that its review of the record was "inadequate and cursory" as compared to the IJ's more "extensive and well-reasoned" decision in his favor. Pet'r. Reply Br. at 1-2 n.1. As to the burdens of proof, Wang argues that the BIA did not inquire whether Wang was "more likely than not" to face torture if returned to China as required under 8 C.F.R. § 1208.16(c)(2), but instead employed a more stringent standard of proof that

2

required proof that Wang personally would have "fall[en] into a category of immigrants" who would be imprisoned and/or tortured. A.R. at 3. Wang contends that because there is more than a fifty percent chance that he would be detained and tortured upon returning to China, withholding of removal is mandatory under the CAT.

At the outset, we reject Wang's contention that the BIA misapplied the proper burdens of proof. Not once, but twice, the BIA stated that Wang bore the burden of "establishing that he will 'more likely than not' be tortured" upon his return to China. A.R. at 2 (quoting 8 C.F.R. § 208.16(c)(2)). As to the comparative "strength" of the IJ's decision against the BIA's decision, the fact that the IJ issued a lengthier oral decision than the BIA's written decision does not without more provide this court a basis to ignore the BIA's decision and review the IJ's decision. Because the BIA did not commit an error of law, we review the BIA's decision and its de novo factfinding rather than the IJ's decision and its factfinding.

In reviewing the merits of the BIA's decision, we note that the standard for invocation of the CAT is more stringent than the standard for granting asylum. The regulations define "torture" as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). We will sustain the BIA's decision if substantial evidence in the record supports its decision. Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003).

The BIA relied on four sources of information in reaching its conclusion that Wang had not proven that he was more likely than not to face torture upon his return to China. First, the State Department's 2000 Country Report on Chinese Human Rights Practices noted that some prisoners within specifically identified groups, such as political dissidents, protestors, Falun Gong supporters, female migrant workers, Tibetans and other national minorities, were subjected to torture. Second, the State Department's 1998 China Profile of Asylum Claims and Country Conditions reported that returning illegal immigrants

3

were generally fined between $600 and $6,000 and many of these persons are subjected to lengthy detention or "re-education," but made no reference to torture. Third, an excerpt of Ko-Lin Chin's 1999 book, Smuggled Chinese, which was submitted by Wang, stated that second-time illegal immigrants may be sentenced to a one year prison sentence in an executive or administrative prison. See also A.R. at 221 (2000 State Department Country Report). Lastly, the Canadian Embassy's Canadian Refugee Board Report recounted interviews with returning illegal immigrants to Changle, Fujian Province, where Wang would be returned, in which the immigrants stated that they had only been detained two days and the Canadian officials concluded that the "[m]uch touted policies of prison sentences and extensive reeducation programs are apparently mostly not implemented" in the Fujian Province. A.R. at 369.

Wang argues that he proved that he was more likely than not to face torture based on the 1998 and 2000 State Department Reports regarding China's general violation of the human rights of its prisoners and its specific policy of forcing returning illegal immigrants to pay fines from $600 to $6,000 and/or face detention. The requirement to pay a fine does not fit within the definition of "torture." Although Wang also states that returning illegal immigrants without the means to pay excessive fines are sometimes detained and tortured, he has not submitted any evidence in support of that contention.

Critically, Wang has failed to explain why he expects that he would be more likely than not to fall within the categories of prisoners identified by the State Department who would be subjected to torture.

Wang argues that the 2000 Report provides a non-exhaustive list of persons who might be tortured and should not be read as an exclusive list. However, he fails to provide any objective evidence why he, as a first-time illegal immigrant, would be more likely than not to be treated similarly. Although the BIA noted that the 2000 Report stated that returning illegal immigrants may face fines and that second-time illegal immigrants or political dissidents may face re-education or labor camps, Wang has provided no evidence – as is his burden of proof – to establish that he personally would be more likely than not to be tortured upon return.

Wang suggests that the BIA should have assumed first-time returning emigrants should have been included within the list of groups likely to be tortured because of the difficulty of monitoring human rights violations in China. Such an assumption would provide automatic CAT protection to all persons returned to China. While we certainly do not intend to suggest our approval of a practice in China of subjecting returning emigrants to prosecution and subsequent punishment, if existent, we are not in a position to express a view on this matter. Lacking a congressional directive to grant the CAT claims from all Chinese immigrants who allege the possibility of

4

detention or imprisonment upon their removal to China, there is no reason for the BIA or this court to adopt such a rule.

In addition, Petitioner takes issue with the BIA's reliance on the Canadian Embassy's Canadian Refugee Board Report, in which Canadian officials concluded that the "[m]uch touted policies of prison sentences and extensive reeducation programs are apparently mostly not implemented" in the Fujian Province. A.R. at 369. Wang contends that this report was unreliable because the Chinese government approved the interviews and likely manipulated the information to which the researchers were given access. Although the BIA's reliance on this state-sanctioned report may be questionable, we find that the BIA's decision is sufficiently substantiated by the 1998 and 2000 State Department Reports and therefore need not address the reliability of the Canadian Report.

### III.

We conclude that the record evidence substantially supports the BIA's judgment and thus we will deny the Petition for Review.

5