

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2004

# Sumadatha v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3898

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Sumadatha v. Atty Gen USA" (2004). *2004 Decisions.* Paper 249.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/249

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 03-3898

I. KETUT SUMADATHA,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals
(A79-300-765)

Submitted Under Third Circuit LAR 34.1(a)
October 4, 2004

Before: SLOVITER, BECKER and STAPLETON, Circuit Judges

(Filed October 6, 2004)

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I. Ketut Sumadatha, a native and citizen of Indonesia, seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA) on August 26, 2003, which summarily affirmed the decision of the Immigration Judge (IJ) denying asylum, withholding of removal, and protection from removal under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).

**I.**

A. Facts

Sumadatha arrived in the United States on June 14, 2000 as a non-immigrant with authorization to remain in the United States on a temporary basis. On April 19, 2001 the Immigration and Naturalization Service (INS) filed a Notice to Appear (NTA) seeking Sumadatha's removal as an alien who overstayed his authorization. Sumadatha conceded removability, but applied for asylum, withholding of removal, and protection under the CAT. His application was grounded on claims of persecution based on his religion (Hinduism) and minority status as an Indonesian man married to an ethnically Chinese woman.

Sumadatha's application and testimony in support of asylum centers primarily on a single incident that occurred in Dempasar, Indonesia on April 21, 1998. He claims that because of his marriage to an ethnically Chinese woman, he was targeted and

2

apprehended by a mob of Indonesians which attacked shop owners and residents, burned churches, and killed ethnic Chinese residents. Sumadatha was not compelled to engage in any specific acts, but alleges that he was partially bound for four hours and was forced to accompany the mob. He also alleges that his house was marked with red paint signaling it as a target to "burn and kill."

Sumadatha managed to escape the mob uninjured, and later went into hiding in the city of Surabaya on the island of East Java. Sumadatha testified that he lived unharmed in Surabaya from June 1998 to June 2000, and returned to Dempasar only once during that time to obtain a passport.

Sumadatha further testified that he has had no contact with his wife or son since the April 1998 incident for fear that any communication would make them "targets" of majoritarian persecution. In addition, he describes a separate incident in June of 1998, where he witnessed ten men assault a woman of Chinese ethnicity. He claims these incidents caused him to suffer a "mental breakdown," characterized by difficulty sleeping and eating. On June 13, 2000, he left Indonesia for the United States. Despite being out of work for over two years, he had amassed savings from his prior businesses of $600 million Indonesian currency ($ 60,000 U.S.).

B. The BIA and IJ Decisions

The BIA summarily affirmed the IJ's decision denying asylum, withholding of removal, and protection from removal under Art. 3 of the CAT.

3

Although the IJ did not make an express adverse credibility finding, he did indicate some doubts about Sumadatha's truthfulness, stating, "in the Court's view, the respondent's answers were sketchy and not particularly persuasive." In particular, Sumadatha's written application for asylum indicating that he was "forced" to do "things" by the Indonesian mob conflicted with his statements during testimony that "he was not specifically required to do anything." In addition, the IJ found Sumadatha's failure to make any attempt to contact his wife since the April 1998 incident "curious, unusual and . . . disproportionate to any plausible risk that his wife might face simply by receiving a letter from him."

The IJ then determined that even with a favorable credibility finding, "the Court would otherwise not have found that the respondent had met his burden of proof and persuasion." The four-hour mob apprehension, alleged threats, and damage to property, were not alone sufficient, in the view of the IJ, to establish past persecution. In addition, the IJ noted several factors which mitigated against Sumadatha's well-founded fear of future persecution: (1) Sumadatha lived in Surabaya, Indonesia for two years without any problems; (2) nothing in the record, including reports from the United States State Department, suggested that Hindus were targeted in any way; (3) Sumadatha did not tender any evidence that he or his family was targeted because of his alleged marriage to a Chinese woman, let alone offer any proof of such marriage; and (4) Sumadatha offered no corroborating or documentary evidence to support his statements.

4

## II.

This court has power to review only final orders of removal. When the BIA does not render its own opinion, but rather defers or adopts the opinion of the IJ, a Court of Appeals must review the decision of the IJ. Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir. 2001). The Supreme Court has stated that the scope of such review is extremely narrow. Because of the profound foreign policy implications, "judicial deference to the Executive Branch is especially appropriate in the immigration context." INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999).

A. Legal Standards

Because we write only for the parties, who are familiar with the applicable statutes, we need not set them forth here. 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A).

Sumadatha argues that the IJ erred when it failed to find that he had shown past persecution. To establish "past persecution", the applicant must show: "'(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control.'" Berishaj v. Ashcroft, __ F.3d __, 2004 WL 1746299, *6 (3d Cir. 2004) (quoting Navas v. INS, 217 F.3d 646, 655-56 (9th Cir. 2000)). An applicant can demonstrate that she has a well-founded fear of future persecution by showing "that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." Gao v. Ashcroft,

299 F.3d 266, 272 (3d Cir. 2002).

The BIA and this court have adopted a narrow definition of persecution, which "include[s] threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993); see also Matter of Acosta, 19 I. & N. Dec. 211, 222 (BIA 1985). By contrast, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin, 12 F.3d at 1240.

To qualify for relief under the CAT, an applicant for relief bears the burden of proving through objective evidence that "it is more likely than not" that he would be tortured in the country of removal. Wang v. Ashcroft, 368 F.3d 347, 348 (3d Cir. 2004) (quoting 8 C.F.R. § 1208.16(c)(2) (2004)).

B. Standard of Review

Whether an applicant qualifies for asylum, withholding, or relief under the CAT is a factual determination, which this court will review under the substantial evidence standard. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). As this court stated in Abdille, "[u]nder the substantial evidence standard, the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Id. at 483-84; see INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1 (1992); Chang v. INS, 119 F.3d 1055, 1060 (3d Cir. 1997) ("On questions of fact, we will reverse the BIA's determination that [an applicant] is not eligible for asylum . . . only if a reasonable fact-

6

finder would have to conclude that the requisite fear of persecution existed.").

C. Analysis

In the present case, Sumadatha has failed to demonstrate that evidence in the record, even if taken as true, "compels" a finding different from that reached by the IJ. The IJ's finding that Sumadatha's four-hour detention, with no attendant physical beatings or torture, does not rise to the level of "past persecution" is supported by substantial evidence in the record, given this court's and the BIA's construction of the term. See Fatin, 12 F.3d at 1240; Acosta, 19 I. & N. Dec. at 222.

We will also defer to the IJ's finding that Sumadatha does not have a well-founded fear of future persecution. Because the one incident of harm was not significant enough to qualify as past persecution, it does nothing to bolster his fear of returning to Indonesia. Further, he was able to live unharmed in Surabaya, Indonesia for two years immediately prior to his arrival to the United States, had amassed a sizable wealth in Indonesia, and was able to obtain a passport in person in Dempasar, the city from which he purportedly fled. There is also no indication in the State Department reports that Hindus or Indonesians married to ethnically Chinese persons are targeted in any way. Thus, the IJ's determination is supported by substantial evidence in the record.

Substantial evidence also supports the IJ's decision denying relief under the CAT, as the standard under that treaty is even more stringent. Neither the record, nor Sumadatha's brief, indicate any probability, much less a probability "more likely than

7

not," that Sumadatha will be tortured if he returns to Indonesia.

For the above reasons we will deny the Petition for Review.