Bin JIANG, Petitioner

v.

*Alberto GONZALES, Attorney General of the United States, Respondent *(Amended pursuant to F.R.A.P. 43(c)).

No. 04–2561.

United States Court of Appeals, Third Circuit.

Submitted pursuant to Third Circuit LAR 34.1(a) July 14, 2005.

Decided July 29, 2005.

Thomas V. Massucci, New York, NY, for Petitioner.

Linda S. Wernery, William C. Minick, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before SLOVITER, McKEE and WEIS, Circuit Judges.

OPINION

McKEE, Circuit Judge.

Bin Jiang seeks review of a decision of the Board of Immigration Appeals affirming an Immigration Judge's decision denying his application for protection under the Convention Against Torture. For the reasons that follow, we will dismiss the petition for review.

## I.

To prevail under a claim under the Contention Against Torture ("CAT"), "the burden of proof is upon the applicant ... to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). *See also Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir.2004). This is more stringent than the standard for granting asylum. *Wang*, 368 F.3d at 349. In making the determination, evidence relevant to the possibility of future torture is considered. 8 C.F.R. § 1208.16(c)(3).

> The regulations define torture as
> [Any] act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). The regulations amplify the meaning of "severe." They explain that torture is "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2).

## II.

Jiang is a native and citizen of China, who arrived in the United States on June 20, 2000, without valid entry documents. After being served with a Notice to Appear charging him with being an inadmissible alien pursuant to Section 212 of the Immigration and Nationality Act, he was placed in removal proceedings, and thereafter conceded removability.

In a written application for relief, Jiang claimed that in April of 2000, he had a physical altercation with two corrupt local officials who attempted to extort money from his family on the pretext of collecting taxes at his mother's store. He asserted that after he challenged the authority of one of the officials to collect the taxes, the official pushed him to the ground, a struggle ensued, he hit the official in the head with a "rock like object," the other official came over to beat him, a fight with that official ensued, and, after his mother's intervention, he ultimately struggled free and ran away.

Jiang claimed that he then hid at a friend's house for about a month because he feared that if he returned home, he would be apprehended, accused falsely, put in jail and beaten. He claimed that because of this confrontation, if he returns to China and these corrupt officials find him, they will physically hurt him. Jiang also asserted that he left China without permission, and that he fears if he is returned there, he will be put in jail, beaten and fined for having left the country illegally.

Jiang also submitted documents in support of his CAT application, which included (1) Chinese household registry books, (2) a Chinese resident identification card, (3) a Chinese notarial certificate of birth, (4) a Chinese elementary school graduation certificate, and (5) news and human rights organization reports which focused primarily on the mistreatment of practitioners of Falun Gong, but which also contained two reports regarding the general problem of torture of prisoners in China.

Jiang was the only witness to testify at his merits hearing. On direct examina-

tion, he testified that he was born in Fujian Province, China, on September 26, 1981. He said that he illegally left China in May 2000, traveling first to England by boat, and then by airplane to the United States. He further said that he believed that if he were returned to China, he would be sent to jail for a year and a half, beaten and fined. When asked why he believed he would be sent to jail, beaten and fined, he stated that he had heard family members say that others who had illegally departed China were beaten after being sent back. He claimed that there would be no way to avoid these problems if he were returned to China.

On cross examination, he conceded that his belief that he would face problems from the government if he returned to China was based on what family members had told him had happened to others who left China illegally, and that he had submitted no documents or other materials that would establish what has actually happened to other people who were returned to China after departing without permission.

On February 25, 2003, the Immigration Judge rendered a written decision denying Jiang's application for CAT relief and ordering his removal from the United States. The BIA summarily affirmed, and this petition for review followed.

### III.

Ordinarily, we review BIA's decision, and not the IJ's. *See Abdulai v. Ashcroft*, 239 F.3d 542, 548–49 (3d Cir.2001). Here, however, given the BIA's summary affirmance, the IJ's decision, by regulation, constitutes "the final agency determination," and, therefore is the decision under review. *See* 8 C.F.R. § 1003.1(e)(4)(ii); *Ambartsoumian v. Ashcroft*, 388 F.3d 85, 89 (2004).

Our scope of review is narrow. We review factual findings under the "substantial evidence" standard. *Id.* at 89. An agency determination is supported by substantial evidence if a reasonable factfinder could make a determination based upon the administrative record. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.2003) (en banc). "[T]he Administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Lanza v. Ashcroft*, 389 F.3d 917, 936 (9th Cir.2004). This standard adopts and codifies the standard announced by the Supreme Court in *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In reviewing a final order of removal, we may not disturb the administrative findings of fact unless any reasonable factfinder would be compelled to conclude to the contrary. *See id.* at 481, 112 S.Ct. 812. To reverse the IJ's decision, we would have to find that the record "not only supports that conclusion, but compels it." *Id.* at 481 n. 1, 112 S.Ct. 812. *See* 8 U.S.C. § 1252(b)(4)(B).

### IV.

■ To be eligible for CAT protection, Jiang had to establish that it is more likely than not that he will be tortured if removed to China. *Wang*, 368 F.3d at 350, 351. However, there is no evidence in the record to support such a conclusion here. While evidence of past torture can be considered in assessing whether future torture is likely, *see Zubeda v. Ashcroft*, 333 F.3d 463, 478 (3d Cir.2003), Jiang's physical altercation with two Chinese officials over taxes certainly did not involve the degree of "severe pain and suffering" necessary to constitute torture. 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel,

inhuman or degrading treatment or punishment that do not amount to torture."). Moreover, Jiang produced no evidence that these two officials or any other officials are still looking for him (more than four and one-half years after the incident) or that they would take any action against him if they were to find him.

Similarly, Jiang's leaving China without official permission does not make it more likely than not that he would be tortured if returned to China. The only evidence offered to support his claim that he would be mistreated because of his unlawful departure is his own testimony which was based exclusively on what he had heard other family members say had happened to others who had returned to China after leaving without permission. Moreover, what Jiang heard had happened to others, and what he believed would happen to him, does not constitute torture. He said that he would be sent to jail for a year and a half, fined, and beaten. However, prosecution for violating a country's laws does not alone constitute torture. *See Wang*, 368 F.3d at 350 ("The requirement to pay a fine does not fit within the definition of 'torture'".) Beatings could constitute torture, but there is nothing in the record to support Jiang's claim that he would be mistreated at all should he be sent to prison, let alone beaten to the extent required to constitute torture.

There are two short reports in the record which state that some prisoners in China are tortured; however, those reports do not compel the conclusion that it is more likely than not that Jiang himself would receive such treatment.

## V.

■ Jiang also argues that the IJ violated his due process rights in three respects.

We disagree. First, contrary to Jiang's assertion, the IJ did provide a reasoned basis for his decision. After considering the oral testimony and written submissions in the record, the IJ entered a written order summarizing the grounds for Jiang's claim of CAT protection, and concluding that he had "not submitted any independent evidence to support is claim for protection under Article 3." The IJ explained that he was not willing to engage in an "assumption" that Jiang was entitled to relief simply on the basis of the "reputation of the Chinese government." AR at 28, 29.

Second, Jiang's assertion that the IJ failed to consider all the relevant documentary evidence is without merit.[1] The IJ specifically said during the merits hearing that "in fairness to Mr. Jiang," he would further review the documents submitted by Jiang prior to entering his decision. AR at 47. Moreover, it is clear from the IJ's written decision that he reviewed that documentary evidence.

Third, Jiang's argument that the IJ requested corroborative evidence of the incident with the two Chinese officials is without merit. The IJ did not request corroborative evidence of that incident and he made no adverse credibility determinations. Furthermore, Jiang's lack of independent evidence of the incident was not essential to the IJ's decision. Even if Jiang's account of that incident is accepted as true, it still does not rise to the level of torture. Since it does not constitute past torture, it can not establish the likelihood that he will be tortured if returned to China. The IJ's reference to "independent evidence to support his claim for protection under Article 3" was not a request for corroborative evidence,

---

1. The documents referred to are a reports about the mistreatment of practitioners of Falun Gong and two reports on the more general problem of torture in Chinese prisons.

but was a reference to the legal requirement for evidence establishing that it is more likely than not that Jiang will face torture if returned to China.

## VI.

For all of the above reasons, we will deny the petition for review.