

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2006

# Thomas v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3229

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Thomas v. Atty Gen USA" (2006). *2006 Decisions.* Paper 34.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/34

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-3229

DOUGLAS THOMAS,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A26-582-649)

Argued October 4, 2006

Before: McKEE, AMBRO and NYGAARD, *Circuit Judges*

(Opinion filed: December 22, 2006 )

JONATHAN FEINBERG, ESQ. (Argued)
Kairys, Rudovsky, Epstein & Messing
924 Cherry Street, Suite 500
Philadelphia, PA 19107
*Attorneys for Petitioner*


CHRISTOPHER J. CHRISTIE, ESQ.
United States Attorney
District of New Jersey
COLLETTE R. BUCHANAN, ESQ. (Argued)

Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Attorneys for Respondent*

OPINION

McKEE, *Circuit Judge*.

Douglas Thomas petitions for review of a decision of the Board of Immigration Appeals sustaining the Department of Homeland Security's appeal of an order of the Immigration Judge. The IJ had granted Thomas relief under the Convention Against Torture ("CAT") and thereby precluded his removal to Haiti. For the reasons that follow, we will deny the petition for review.

**I.**

Inasmuch as we are writing primarily for the parties who are familiar with this case, we need not reiterate the factual or procedural background of this appeal except insofar as may be helpful to our discussion.

In proceedings before an IJ, Thomas conceded deportability but applied for relief under the CAT, waiver of removal under former § 212(c) of the INA, and for removal of his conditional permanent resident status through an I-751 waiver.

At a merits hearing before the IJ, Thomas testified in support of his application for protection under the CAT. He contended that because he is a criminal deportee he will be indefinitely detained in a Haitian prison upon his return and that he will be forced to endure appalling prison conditions that amount to torture. He further contended that he

2

would be injured or killed because he assisted the prosecution of three Haitian drug dealers – Teddy Delinois, Reginald LaRouche and Jeremy Kernase.

He submitted documentary evidence, most notably the U.S. State Department's *Country Reports on Human Rights Practices - 2000*, to support his claim for CAT relief based upon the conditions in Haitian prisons. That report corroborates his claim that criminals who are deported to Haiti are detained in Haitian prisons and that the prison conditions are beyond deplorable.[1]

Thomas also contended that Haitian officials connected with Delinois and LaRouche would injure or kill him if he is returned. He offered only his own testimony in support of that claim.

The IJ granted Thomas's application for adjustment of status to lawful permanent resident. However, the IJ denied Thomas's application for an INA § 212(c) waiver. The

---

[1]For example, the *Country Report* states:

Police mistreatment of suspects at both the time of arrest and during detention remains pervasive in all parts of the country. Beating with fists, sticks, and belts is by far the most common form of abuse. However, international organizations documented other forms of mistreatment, such as burning with cigarettes, choking, hooding, and kalot marassa (severe boxing of the ears, which can result in eardrum damage). Those who reported such abuse often had visible injuries consistent with the alleged maltreatment. There were also isolated allegations of torture by electric shock. Mistreatment also takes the form of withholding of medical treatment from injured jail inmates. Police almost never are prosecuted for the abuse of detainees.

App. 71-72.

IJ also concluded that since Thomas had been convicted of a particularly serious crime, he was ineligible for withholding of removal. However, the IJ did grant Thomas's application for deferral of removal pursuant to the CAT.

The IJ explained:

> he'll be placed in a situation where I believe he will be tortured. The intentional infliction of mental and physical suffering. The correction system, the government, the people behind the government, the people connected with the drug people all have the ability to harm him once he's in prison. There are myriad of different ways that they can harm him, and I believe that torture is one of them and I believe that it is more likely than not that he will be tortured upon return to Haiti, once he's taken into custody and I don't think there's any question he'll be taken into custody because of his open and notorious testimony in the Federal courts against the Haitian drug dealers.

Ap. 19-20.

## II

Both Thomas and the government appealed to the BIA. The BIA sustained the government's appeal, vacated the IJ's order and ordered Thomas removed from the United States to Haiti. It held that Thomas's detention upon return to Haiti does not, without more, establish that it is more likely than not that he will be subjected to "torture" within the meaning of the CAT. It based that holding on its precedential opinion in *Matter of J-E*, 23 I. & N. Dec. 291 (BIA 2002).

In addressing Thomas's claim of retribution from Haitian drug dealers,[2] the BIA

---

[2]The BIA's review of this claim was based on a *de novo* review of the factual

(continued...)

4

noted:

> [Thomas] contended that people linked to Teddy Delinois will harm him. He asserted that Mr. Delinois has an aunt, Beret Delinois, who was married to a former drug lord, Jean-Claude Paul, who had a right-hand man, Danny Toussant, who is now a senator, who has a security force that would harm him upon his return. Accordingly, the . . . contention that someone three steps removed from Mr. Delinios will seek him out and torture him is speculative. It is also unlikely in light of [Thomas's] admission that Beret Delinois and Jean-Claude Paul died in 1988 and 1990, respectively, over a decade ago, which was prior to [Thomas's] cooperation with the authorities.

App. 3A. The BIA also noted the lack of corroborating evidence to support his claims. Thomas testified that his cousin in Haiti had told him that Toussant was aware of his pending removal. He testified that his cousin knew this because his cousin's uncle is part of the Haitian National Police Force. The BIA was skeptical because Thomas failed to submit an affidavit or letter from his cousin or his cousin's uncle. The BIA explained: "considering the alleged harm as a result of [Thomas's] deportation to Haiti, the absence of such proof from a family member undermines the credulity of the assertions." App. 3B. The BIA also noted that Thomas adduced no proof that his cousin's uncle is even a member of the police force in Haiti.

Similarly, the BIA explained the following with regard to Thomas's professed fear

---

[2](...continued) record. Under currently applicable regulations, the BIA's review of the IJ's factual findings is under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). However, the current regulations do not apply to this case because Thomas's appeal to the BIA was filed before the current regulations calling for the clearly erroneous standard were implemented in September 2002. *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004).

of retribution from Reginald LaRouche:

> [Thomas] also contended that relatives of Reginald LaRouche will harm
> him if he is deported to Haiti. This conclusion is similarly based on the
> testimony of [Thomas]. [He] contended that Mr. LaRouche's father "is a
> millionaire and owns a hotel" and is "well-connected politically."
> However, when asked how Mr. LaRouche's father would know that he is
> fighting deportation, [Thomas] explained that a "middleman" may have
> told Mr. LaRouche and that a friend relayed this information to him. Yet,
> this "friend" was not present at [Thomas's] hearing, despite the fact that he
> is a United States Citizen.

App. 3B.

Given Thomas's failure to support his assertion that he will be targeted by Haitian drug dealers upon his return to Haiti, the BIA concluded that he had not met his burden under the CAT. It conceded that an applicant's testimony, standing alone, can suffice where it is believable, consistent, and is sufficiently detailed to provide a plausible and coherent account of the basis of the fear. However, the BIA concluded that Thomas's testimony did not satisfy that test because it was not sufficiently documented, detailed or credible. *Id.*[3]

---

[3] Although we agree with that Thomas has not established the likelihood of torture under our precedent, we nevertheless hasten to add a note of caution insofar as the BIA seems to have expected documentary evidence of threats against Thomas by Haitian drug dealers. It is highly unlikely that drug dealers, or those associated with them, would generate documentary evidence of illegal activity or threats of revenge against someone who has cooperated with the government. The BIA did not elaborate upon the kind of documentary evidence Thomas might reasonably be expected to have of any such threats, and we cannot imagine any such documents. Nevertheless, as we shall explain, our concern with this facet of the BIA's ruling does not undermine the conclusion that Thomas has not shown eligibility for relief under the CAT.

6

## IV.

Thomas filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2241 in which he challenged the BIA's removal order. The petition was pending on May 11, 2005, when the REAL ID Act of 2005, Pub.L No. 109-13, Div. B, 119 Stat. 231, was enacted. Section 106(a) of the REAL ID Act amended 8 U.S.C. § 1252(a)(2) of the INA by eliminating the district court's habeas corpus jurisdiction over final orders of removal in nearly all cases. *Francois v. Gonzales*, 448 F.3d 645, 647 (3d Cir. 2006). "Consequently, a petition for review filed in the appropriate court of appeals 'is [now] the sole and exclusive means for judicial review of any cause or claim under the [CAT]." *Id*. (quoting REAL ID Act § 106(a)(1)(B), 8 U.S.C. § 1252(a)(4)). A related provision, § 106(c) of the REAL ID Act, "provided that habeas petitions filed under § 2241 which were pending in the district court before May 11, 2005, shall be transferred to the court of appeals 'for the circuit in which a petition for review could have been properly filed . . . [and treated] as if it had been filed pursuant to a petition for review,' with an exception not relevant here." *Francois*, at 647 (citing REAL ID Act § 106(c)). Consequently, Thomas's habeas petition was transferred to this court and was converted into a petition for review.

## VI.

Although 8 U.S.C. § 1252(a)(2)(C) nominally operates to strip courts of appeals of jurisdiction to adjudicate petitions for review of removal orders filed by aggravated

7

felons, the REAL ID Act restores our jurisdiction to review "constitutional claims and questions of law" by amending 8 U.S.C. § 1252(a)(2)(D). Thus, our review is limited to "pure questions of law" and "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." *Kamara v. Att'y Gen. of the United States*, 420 F.3d 202, 210-11 (3d Cir. 2005). We review the BIA's legal conclusions *de novo*, but afford deference to the BIA's reasonable interpretations of statutes which it is charged with administering. *Id.* However, we do not have jurisdiction to review the discretionary or factual determinations of the BIA. *Id.*

## VI. THE CONVENTION AGAINST TORTURE

On October 21, 1998, the President signed the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, Div. G., 112 Stat. 2681-761, into law. That Act implemented Article 3 of the Convention Against Torture[4] and required that implementing regulations be promulgated by the interested agencies within 120 days. As directed, the Department of Justice promulgated regulations setting forth the procedures by which aliens could obtain CAT relief. *See* 64 Fed. Reg. 8478, codified at 8 C.F.R. §§ 208.16(c), 208.17 & 208.18(a).[5]

---

[4] Article 3 of the CAT states: "No State Party shall expel, return ("*refouler*") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Art. 3(1), S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85.

[5] The Immigration and Naturalization Service ("INS") was then an agency under the Department of Justice.

8

8 C.F.R. § 208.18(a)(1), the regulatory definition of torture, mirrors the definition of torture contained in Article 1 of the CAT. Certain subsections of § 208.18 are relevant here:

(a)(1) Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

(a)(2) Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that does not amount to torture.

(a)(3) Torture does not include pain or suffering arising only from, inherent it or incidental to lawful sanctions.

(a)(4) In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from:

(i) The intentional infliction or threatened infliction of severe physical pain or suffering;

(ii) The administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(iii) The threat of imminent death; or

(iv) The threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration of mind altering substances or other procedures calculated to disrupt profoundly the sense or

9

personality.

(a)(5) In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture.

The Department of Justice also promulgated regulations specifying the elements of a CAT claim, and the burden of proof. Section 208.16(c)(2) provides that "[t]he burden of proof is on the applicant for withholding of removal[6] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." If an applicant establishes that he "more likely than not would be tortured" upon removal to his home country, withholding or deferral of removal is mandatory. 8 C.F.R. §§ 208.16(c)(3) and (4). The objective evidence to be considered in evaluating a CAT claim includes "[e]vidence of past torture inflicted upon the applicant;" "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal;" and "[o]ther relevant information regarding conditions in the country of removal." *See* 8 C.F.R. § 208.16(c)(3); *see also* 8 C.F.R. § 208.17(a).

## VII. DISCUSSION

Thomas makes two arguments in support of his petition for review. Each is

---

[6]Applicants for CAT relief can seek either deferral of removal or withholding of removal. Regulations for withholding of removal are found at 8 C.F.R. § 208.16 and the regulations for deferral are found at § 208.17. "However, the general standards of eligibility for each are identical, i.e., a requirement that an alien establish that future 'torture' is 'more likely than not.'" *Auguste v. Ridge*, 395 F.3d 123, 134 n. 8 (3d Cir. 2005).

10

discussed below.

## A. The BIA Applied an Impermissible "Specific Intent" Requirement to the CAT Claim.

Before the BIA, Thomas contended that he was entitled to CAT relief because, as a criminal deportee, he will be detained in a Haitian prison where he will be subjected to horrendous conditions tantamount to torture. However, the BIA quickly rejected that argument stating: "the fact that [Thomas] may be subject to imprisonment in Haiti does not without more establish that it is more likely than not he would be tortured. *See Matter of J-E*, 23 I&N Dec. 291 (BIA 2002)." App. 2A.

In *Matter of J-E*, the BIA held that the use of the terms "intentionally inflicted" and "specifically intended" in the regulatory definitions of torture constitute a "specific intent" requirement. In his petition for review, Thomas argues that the BIA's reliance on *Matter of J-E* in denying his claim for CAT relief was error because the BIA applied an impermissible "specific intent" standard to his CAT claim. In Thomas's view, our decision in *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir. 2003), overruled *Matter of J-E*.

We disagree. In *Auguste v. Ridge*, 395 F.3d 123 (3d Cir. 2005), decided after *Zubeda*, we rejected the very argument Thomas is making here, and held that the brutal and horrendous conditions that prison inmates and detainees face in Haiti do not amount to torture. We again rejected this argument in *Francois v. Gonzales*, 448 F.3d 645 (3d Cir. 2006). We distinguished our analysis there from our analysis in *Zubeda* as follows: "[o]ur entire discussion [in *Zubeda]* was in the context of a woman who alleged that she

11

would be raped if returned to her native country, and we had to determine if that allegation could support relief under the CAT . . .".  The situation here is quite different.  Accordingly, *Auguste* and *Francois* control Thomas's prison conditions claim.

In fact, the only thing distinguishing Thomas's situation from that in *Auguste* and *Francois* is Thomas's claim that because of his cooperation with the government in the prosecution of Haitian drug dealers, relatives of those drug dealers would harm or kill him with the consent of or acquiescence of Haitian government if he was returned to Haiti.  As noted, that claim was rejected by the BIA.  The BIA concluded that that claim was not supported by the record, and we cannot review the BIA's factual determinations.[7]

Undeterred, Thomas argues that even if the specific intent standard discussed in *Zubeda* is the appropriate one, the BIA applied an unlawful "heightened" specific intent standard.  Thomas notes that his application for CAT relief was premised upon two grounds. The first was prison conditions; the second was his contention that he would be subjected to torture because of he assisted in prosecuting Haitian drug dealers.  Although the IJ agreed with his second ground, the BIA rejected it.  It wrote:

> In our review, we find that the record does not support [Thomas's] assertions at his hearing that relatives of the individuals he helped prosecute, or people connected with these relatives, are waiting for him in Haiti and *plan to torture him.*

---

[7] Pursuant to the REAL ID Act's amendments to 8 U.S.C. § 1252(a)(2)(D), we have jurisdiction to consider a petition for review of an alien convicted of a drug trafficking crime, but our jurisdiction is limited to that of constitutional claims and questions of law.  *Kamara v. Attorney Att'y*, 420 F.3d 202, 211 (3d Cir. 2005).

App. 3A (emphasis added). In Thomas's view, the italicized words demonstrate that the BIA applied an impermissible heightened specific intent standard to his claim. Thus, he submits that had the BIA applied the *Auguste* "specific intent" standard, it would have been compelled to find that he proved that associates of the drug dealers possessed the necessary intent. We disagree.

The statement in question cannot be read out of context, and it is clear from the totality of the BIA's discussion that it understood that the intent required under the applicable regulation.

## B. Remand for Additional Factfinding.

Thomas asks that we remand to the BIA if we decide that the current record does not establish eligibility for CAT relief. He contends that in the four and one-half year time period between his hearing before the IJ and our receipt of the administrative record, dramatic changes have occurred in Haiti, most notably the ouster of President Jean-Bertrand Aristide on February 24, 2004. He claims these changes have worsened human rights conditions in general and conditions for detained deportees in particular.

However, we do not believe that we have jurisdiction to remand for additional factfinding. Under normal administrative review:

> If a party to a proceeding to review applies to the court of appeals in
> which the proceeding is pending for leave to adduce additional
> evidence and shows to the satisfaction of the court that--
>> (1) the additional evidence is material; and
>> (2) there were reasonable grounds for failure to adduce the evidence
>> before the agency; *the court may order the additional evidence and*

13

> *any counterevidence the opposite party desires to offer to be taken by the agency.* The agency may modify its findings of fact, or make new findings, by reason of the additional evidence so taken, and may modify or set aside its order, and shall file in the court the additional evidence, the modified findings or new findings, and the modified order or the order setting aside the original order.

28 U.S.C. § 2347©) (emphasis added). In immigration cases, the jurisdictional statute allows us to review decisions of the BIA as final agency determinations in the usual manner under 28 U.S.C. §§ 2341 *et seq.*, except that it specifically bars us from remanding to the agency for further factfinding. 8 U.S.C. § 1252(a)(1) ("*[T]he court may not order the taking of additional evidence under 28 U.S.C. § 2347©)*") (emphasis added). In addition, the jurisdictional statute stipulates that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(a)(4)(A) (emphasis added). When read together, these two provisions reflect a congressional intent to extend our jurisdiction only to review of the final order of removal. It does not further extend to order additional factfinding.

In *Berishaj v. Ashcroft*, 378 F.3d 314, 330 (3d Cir. 2004), we stated that "Congress could require the Courts of Appeals, in their sound discretion, on motion or *sua sponte*, to grant petitions for review of the BIA, and remand when it appears from judicially noticeable materials that the record compiled before the agency does not generally reflect contemporary country conditions." However, we also held that we are unable to afford any such relief under current law and that the appropriate procedure is moving to reopen proceedings on the basis of new facts. We also encouraged the BIA and the Government to

14

take responsibility for updating records when necessary. *Id.* at 330-31. We reiterated the *Berishaj* holding in *Kamara v. Att'y Gen. of the U.S.*, 420 F.3d 202, 218 (3d Cir. 2005), again holding that we are unable to look beyond the administrative record. We again requested that the Attorney General screen cases that are inappropriate for appellate review because of changed circumstances, but this was, as in *Berishaj*, no more than a request, reflecting our holding that we could not force the parties to update the record through remand. *Id.*

Although we do not think that we have jurisdiction to remand for additional factfinding, we do believe that Thomas can move to reopen. The typical time and numeric limitations on motions to reopen do not apply when the purpose of the motion is "[t]o apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). It is true that Thomas ultimately seeks deferral of removal rather than withholding, but regulations actually classify deferral of removal not as a separate claim for relief but as relief that is given as a matter of right if the alien would be eligible for withholding of removal but for his criminal conviction. The regulation reads:

> An alien who: has been ordered removed; has been found
> under § 208.16(c)(3) [the withholding of removal regulation]
> to be entitled to protection under the Convention Against
> Torture; and is subject to the provisions for mandatory denial

of withholding of removal under § 208.16(d)(2) or (d)(3), shall be granted deferral of removal to the country where he or she is more likely that not to be tortured.

8 C.F.R. § 2087.17(a) (emphasis added).  Thus, Thomas should be able to move to reopen

for the purposes of applying for deferral of removal based on changed circumstances.

## VIII.  CONCLUSION

For all of the above reasons, we will deny the petition for review.

16