**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4662
_____

JHON FREY CUBIDES GOMEZ,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A093-491-762)
Immigration Judge: Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 11, 2010
Before: SLOVITER, JORDAN and GREENBERG, Circuit Judges

(Opinion filed: August 16, 2010 )
_____

OPINION
_____

PER CURIAM

      Jhon Frey Cubides Gomez ("Cubides"), a native and citizen of Colombia, petitions

for review of an order by the Board of Immigration Appeals ("BIA") affirming an

immigration judge's order denying his application for asylum, withholding of removal,

and protection under the Convention Against Torture ("CAT").  For the following reasons, the petition for review will be denied.

I.

Cubides entered the United States without inspection in 2005.  He married Veronica Cubides, a United States citizen, in 2007.  In 2008, Cubides was served a Notice to Appear ("NTA") and placed in removal proceedings.  Cubides appeared in removal proceedings and applied for asylum, withholding of removal, and protection under the CAT.  In the alternative, Cubides sought relief from removal in the form of voluntary departure.

At his immigration hearing, Cubides testified that he came to the United States to escape death threats, harassment, and extortion attempts by the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), a guerilla group in Colombia.  The threats began in 2003 when Cubides took over his father's fuel transport business after his death. (AR 223.)  Cubides had not been involved with his father's business prior to his death, but was aware that the business was a target for guerillas:[1] his father's truck was destroyed by a bomb in 2002 (AR 227), he once answered a telephone call in which he heard threats directed at his father (AR 242), and he read a letter from the FARC threatening his father's business and criticizing him for supporting paramilitary groups. (AR 228.)  On another occasion, Cubides accompanied his father on a business trip and

---

[1] Cubides believes that the FARC targeted his father because he gave assistance to paramilitary organizations that were against the FARC.  (AR 225-26.)

when they returned to their car they found it riddled with bullet holes. (AR 227.) In 1996, Cubides' Uncle Alvaro, who was in the same business, was assassinated in front of his home by unknown assailants believed to be guerillas. (AR 229.) However, Cubides himself was shielded from his father's business dealings and only began to receive threats after his father's death. (AR 244.)

The first threat Cubides received was from an unidentified caller who told him that they needed to know everything about the business and that Cubides should meet with them. (AR 244.) On two subsequent occasions, Cubides' doorman told him that people had come by asking for him when he was not at home. (AR 252.) He was also followed on his motorcycle three times by a car full of armed men who he believed were guerillas. (AR 261-67.) Cubides testified that no one else in his immediate family was bothered by guerillas. (AR 233.) He believes that the FARC viewed Cubides as the successor to his father's fuel business and therefore became their new target.[2] And although he has not received any communications to indicate that the FARC are still looking for him, he is afraid that if returned to Colombia, the guerillas would find him and torture him for information about his father's business. (AR 237-339.)

The immigration judge ("IJ") granted voluntary departure, but denied Cubides' asylum and withholding claims, finding that his asylum application was time-barred and furthermore that he had failed to meet the standard of proof for withholding of removal or

---

[2] However, unbeknownst to the FARC, his family sold the business prior to his father's death to pay for medical expenses. (AR 232, 244.)

protection under the CAT. The IJ concluded that because the threats Cubides testified to were unfulfilled and did not result in any physical harm, they were not imminent or concrete enough to constitute persecution. See Li v. Att'y Gen., 400 F.3d 157, 164-65 (3d Cir. 2005). The IJ further concluded that Cubides failed to show that his fear of persecution by the FARC, even if well-founded, was on account of "membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(2)(i)(A). In particular, the IJ found that Cubides could not demonstrate persecution as a member of a group of persons victimized by organized crime, because, "for purposes of fear of future persecution" the social group has to "exist independently of the persecution suffered by the applicant." See Lukwago v. Ashcroft, 329 F.3d 157, 172 (3d Cir. 2003). Nor could Cubides claim persecution on the basis of imputed political opinion because the threats he received appeared to be attempts at extortion and there was no evidence that any of the alleged threats were tied to any expressed or imputed political opinion. See Chavarria v. Gonzales, 446 F.3d 508, 518 (3d Cir. 2006); INS v. Elias-Zacarias, 502 U.S. 478 (1992). Thus, Cubides could not show a nexus between his fear of harm and a statutorily protected ground. Accordingly, the IJ denied withholding of removal. The IJ denied CAT protection because Cubides did not carry his burden of showing that it was more likely than not that he would be tortured if returned to Colombia.

The BIA agreed with the IJ's conclusion that the threats Cubides experienced over this two-year period were not imminent or concrete, and thus did not place Cubides within the small category of cases where threats alone establish persecution. The BIA

4

also found that Cubides was not eligible for withholding of removal because he had not carried his burden of showing that he would more likely than not be persecuted in Colombia. In reaching this conclusion, the BIA relied on the fact that members of Cubides' family have remained in Colombia unharmed, and the fact that there was no evidence indicating that the FARC have continued to look for Cubides or threaten him. The BIA also concluded that Cubides was not eligible for protection under the CAT because he had not established that he would more likely than not be tortured. The instant petition for review followed.

## II.

We have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li, 400 F.3d at 162. However, we also look to the decision of the IJ to the extent that the BIA defers to or adopts the IJ's reasoning. See Chavarria, 446 F.3d at 515. Factual findings are reviewed for substantial evidence and must be treated as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) (citing 8 U.S.C. § 1252(b)(4)(B)). We review the BIA's legal determinations de novo, "subject to established principles of deference." Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004) (citations omitted). We will uphold the BIA's determinations as to whether the burden of proof was met if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). The Court will reverse only

5

if the evidence not only supports a contrary conclusion, but compels it. Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004).

III.

Cubides argues that the BIA erred in holding that he failed to meet his burden for withholding of removal and protection under the CAT.[3] He first argues that the BIA erred in affirming the IJ's determination that the various threats and extortion attempts he endured failed to establish past persecution because the IJ failed to consider the violent acts against his father's property, his uncle's killing in 1996, and the mental harm he suffered as a result of the threats. Unfulfilled threats "must be of a highly imminent and menacing nature in order to constitute persecution." Li, 400 F.3d at 164 (noting that even in cases where the petitioner had a friend or relative who was murdered, and the petitioner was threatened with a similar fate, these unfulfilled threats were not imminent enough to establish past persecution). In this case, there was no evidence that Cubides was ever physically attacked or hurt, there was no indication that the callers ever attempted to carry out the threats, and while he did suffer from anxiety and depression, his condition was not severe enough to interfere with his everyday life. See Chavarria, 446 F.3d at 518 (explaining that threats constituting persecution are limited to a small category of cases where the threats are "so menacing as to cause significant actual 'suffering or harm'"). Although the IJ did not explicitly consider what had happened to Cubides' father or

---

[3] Cubides does not challenge the BIA's conclusion that, because his application was filed outside of the 1-year filing deadline, he is not eligible for asylum. See 8 U.S.C. § 1158(a)(2)(B).

6

uncle, the record as a whole supports the IJ's conclusion that the unfulfilled threats directed at Cubides did not rise to the level of persecution.

Cubides next argues that the BIA erred in upholding the IJ's conclusion that it was not more likely than not that he would be subjected to future persecution if he were to return to Colombia. See 8 C.F.R. § 208.16(b)(2); see also Lukwago, 329 F.3d at 182. He argues that the BIA's reliance on the fact that Cubides has family members who have remained in Colombia unharmed is wrong, because his family members had no association with his father's fuel business and are therefore not similarly situated to him. He submits that the more salient question would be whether the purchaser of his father's company has experienced such threats. Nevertheless, as Cubides acknowledges, there is nothing in the record indicating that anyone associated with Cubides or his father's business faces ongoing threats from guerillas. Furthermore, the BIA also based its determination on Cubides' failure to provide any compelling evidence that the FARC have tried to track him down or threaten him after his departure. While Cubides provided evidence showing that FARC members targeting paramilitary sympathizers, and extortion by guerillas, are country-wide problems, he produced no evidence that guerillas would target him in particular or seek him out for persecution upon his return. Thus, the BIA's conclusion, that Cubides failed to sustain his burden of showing that it is more likely than

not that he would be persecuted if he were to return to Colombia, is supported by reasonable, substantial, and probative evidence on the record considered as a whole.[4]

Finally, Cubides argues that the BIA erred in affirming the IJ's analysis of his CAT claim. In order to be eligible for CAT protection, the petitioner must demonstrate that it is more likely than not that he would be tortured if removed, and that the torture would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1); see Tarrawally v. Ashcroft, 338 F.3d 180, 187 (3d Cir. 2003). The IJ denied CAT relief in this case because she found that the evidence supporting his claim was "inconclusive." (AR 189). The BIA affirmed. Although Cubides argues that his CAT claim was not thoroughly analyzed or supported by citations to the record, Cubides has not identified any evidence in the record that would compel a contrary result. Cubides refers to country reports documenting rampant violence and killing by the FARC and against paramilitary groups, but there is no evidence that the government has acquiesced or is willfully blind

---

[4] Cubides also argues that the BIA erred in failing to examine the country conditions more closely for a pattern of persecution targeted towards business owners who are perceived or actual paramilitary collaborators. He further argues that business owners who are perceived or actual paramilitary collaborators are a social group that meets the requirements set forth by the BIA in Matter of Acosta, 19 I.&N. Dec. 211, 233-34 (BIA 1985) (explaining that "[p]ersecution on account of membership in a particular social group" refers to persecution that is directed toward "a group of persons all of whom share a common, immutable characteristic" that is "fundamental to their individual identities or consciences"). The BIA did not reach the question of whether Cubides met his burden of showing that the alleged persecution alleged was on account of membership in a particular social group. Because substantial evidence supports the BIA's determination that Cubides did not establish a likelihood of persecution, like the BIA, we need not address whether that alleged persecution was on account of a protected ground.

to these events. Nor is there any evidence, other than his own testimony, that guerillas would target Cubides for torture if returned to Colombia. The IJ's determination that the evidence supporting his claim for relief under the CAT was "inconclusive" is supported by the record.

## IV.

For the foregoing reasons, we will deny the petition for review.