

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-2007

# Lie v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3395

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Lie v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1265.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1265

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3395

RUDY WIANTO LIE,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

On Review of a Decision of the
Board of Immigration Appeals
(Agency No.  A79 734 982)
Immigration Judge: Miriam K. Mills

Submitted pursuant to Third Circuit LAR 34.1(a)
March 29, 2007

Before: RENDELL, BARRY, and CHAGARES, <u>Circuit</u> <u>Judges</u>.

(Filed: April 18, 2007)

OPINION OF THE COURT

CHAGARES, Circuit Judge:

Rudy Wianto Lie petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA").  The BIA denied Lie's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  Because substantial evidence supports the BIA's denial of withholding of removal and CAT relief, we will deny the petition for review.[1]

I.

We have jurisdiction to review the BIA's final orders of removal.  8 U.S.C. § 1252(a).  The BIA's determinations regarding past persecution, the likelihood of future persecution, and the likelihood of torture are reviewed for substantial evidence.  See Wang v. Ashcroft, 368 F.3d 347, 349-50 (3d Cir. 2004); Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).  Under this standard, "the BIA's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it."  Abdille, 242 F.3d at 483-84.

II.

The Attorney General must grant withholding of removal if he "decides that the alien's life or freedom would be threatened" in the country of removal "because of the alien's race, religion, nationality, membership in a particular social group, or political

---

[1]The BIA rejected Lie's asylum application on timeliness grounds.  Lie does not challenge that determination, nor could he, as we lack jurisdiction to review such claims. See 8 U.S.C. § 1158(a)(3); Sukwanputra v. Gonzales, 434 F.3d 627, 633-34 (3d Cir. 2006).

opinion." 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of proving that he will more likely than not face persecution on account of a protected ground. See INS v. Stevic, 467 U.S. 407, 429-30 (1984).

If the alien can demonstrate past persecution, then that finding will raise a rebuttable presumption that the alien's "life or freedom would be threatened in the future . . . ." 8 C.F.R. § 1208.16(b)(1)(i). Past persecution requires proof of "(1) one or more incidents rising to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed either by the government or by forces that the government is either unable or unwilling to control." Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). Under our cases, "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir.1993). It encompasses only grave harms such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Id. at 1240.

Mr. Lie is a native and citizen of Indonesia.[2] He is also a Catholic of Chinese descent. Lie claims to have suffered persecution in Indonesia on account of his religion and ethnicity. In particular, Lie contends that three specific incidents compel a finding of past persecution.

The first incident occurred in 1996. Lie owned and operated an automobile garage

---

[2]Because we are writing for the parties, we set forth only those facts pertinent to our analysis.

in Madiun City's heavily Muslim Jiwan district. Beginning in June, the village chief and several local residents demanded that Lie make monthly payments for air and sound pollution produced by the garage. For a few months, Lie made the payments. In October, however, the village chief demanded a particularly large contribution to the local Muslim school. Lie refused, and that same night "several drunken people came to [his] garage and . . . destroyed it." Administrative Record ("AR") 222-23. As unfortunate as this incident was, Lie offered no evidence tending to show that the village chief or the "drunken" looters acted with an anti-Catholic or anti-Chinese animus. To the contrary, Lie appears to have been the victim of a shakedown by corrupt government officials. We therefore conclude that this incident does not compel a finding of religious or ethnic persecution.

The Christmas after Lie lost his business, he and his family attended Midnight Mass at their local parish. About 45 minutes into the Mass, Lie heard "noisy sounds from . . . motorcycles outside the church." AR 223. A band of thugs from "Setia Hati Teratai, [t]he famous Moslem self-defense institution," were vandalizing cars in the church parking lot. Id. When the vandalism ended around 3 a.m., the parishioners went outside to survey the damage. Some vehicles were severely damaged, but Lie's car escaped with no more than a broken left-side window. Even if we were to assume *arguendo* that the vandals acted with an anti-Catholic motive, a broken car window does not even approach the sort of grave harm needed to compel a finding of past persecution. See Fatin, 12 F.3d at 1240.

4

A few weeks after Christmas 1996, Lie and his family moved to the city of Surabaya. Lie opened a store that sold canned food and fresh meat. At first, business was booming. But in February 1998, a group of Muslims threatened to close down the store unless Lie stopped selling pork. Lie complied, but business suffered. By March, Lie was forced to close down. Lie claims that this intimidation by anti-pork Muslims amounted to persecution. As we see it, though, this evidence does not compel any such finding. By Lie's own account, the would-be persecutors acted not because of his Catholicism or his Chinese heritage, but because he sold pork. Lie makes no claim that porkmongers are a protected class under the immigration laws. As a result, substantial evidence supports the BIA's determination that Lie failed to demonstrate past persecution.

Lie also claims that the human-rights abuses detailed in the State Department Country Report and the Religious Freedom Report indicate that Lie will likely face persecution on account of his religion and ethnicity. In our view, nothing in these reports compels such a finding.

Lie's brief does not provide any separate analysis of his CAT claim. Based on our review of the record, substantial evidence supports the BIA's determination that Lie does not face a likelihood of torture upon his return to Indonesia. See Lukwago v. Ashcroft, 329 F.3d 157, 182-83 (3d Cir. 2003).

Accordingly, we will deny the petition for review.

5