OPINION
PER CURIAM.
Petitioner Passang Tenzin seeks review of a final decision by the Board of Immigration Appeals (“BIA”) issued on August *822 1, 2008. For the reasons that follow, we will deny the petition for review.
I. Background
Tenzin is a native of Tibet and a citizen of China. He claims that, in 1994, he became a Buddhist monk and began living in a monastery. In 2002, upon discovering a Dalai Lama prayer book in his room, Chinese authorities allegedly arrested him, assaulted him, and imprisoned him for three months. After his release, Tenzin fled Tibet. During a stay with an uncle in India, Tenzin stopped being a monk and got married. Tenzin eventually entered the United States on a fraudulent Nepalese passport. He applied for asylum, withholding of removal, and protection under the Convention Against Torture (“CAT”), claiming past persecution and a well-founded fear of future persecution and torture based upon his religion.
After a hearing, the Immigration Judge (“IJ”) rendered an oral decision on January 24, 2007. The IJ recognized that Tibetan monks face serious persecution at the hands of the Chinese government and expressed great sympathy for those who face such a plight. However, the IJ found a serious conflict between Tenzin’s testimony and his proffered documentary evidence. Specifically, Tenzin submitted a household registry document issued in the year 2000, during the time that Tenzin claimed he had been living full-time at the monastery. According to the IJ, the document showed that Tenzin lived and worked at home with his family, not in a monastery. This “complete contradiction with [his] testimony” called into question the fundamental issue of Tenzin’s identity as a monk. Coupled with a lack of corroborating evidence, this credibility issue led the IJ, “with heavy heart,” to deny Tenzin’s application.
On August 1, 2008, the BIA issued a decision agreeing with the IJ’s conclusion that Tenzin did not meet his burden of proof due to a lack of credibility and of corroborating evidence. The BIA affirmed the IJ’s decision and dismissed Tenzin’s appeal. This petition for review followed.
II. Analysis
We generally review only final orders of the BIA. See Li v. Att’y Gen., 400 F.3d 157, 162 (3d Cir.2005); Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir.2001). However, where the BIA adopts the IJ’s reasoning and discusses some of the bases of the IJ’s decision, we also review the IJ’s order. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir.2004). We review legal conclusions de novo, see Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir.2003), and uphold factual determinations if they are supported “by reasonable, substantial and probative evidence on the record considered as a whole.” Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir.2004). Ultimately, for Tenzin to succeed on his petition for review, this Court “must find that the evidence not only supports that conclusion [, that the application should have been granted], but compels it.” INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).
A.
The BIA upheld the IJ’s finding that Tenzin was not credible because of inconsistencies concerning his identity as a Buddhist monk. We review adverse credibility determinations for substantial evidence. Chen v. Ashcroft, 376 F.3d 215, 221-22 (3d Cir.2004). Accordingly, we will affirm the adverse credibility finding if it is supported by “reasonable, substantial, and probative evidence on the record considered as a whole.” Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002). To reverse, the evidence of Tenzin’s credibility must be so strong “that in a civil trial he would *823 be entitled to judgment on the credibility issue as a matter of law.” Chen, 376 F.3d at 222.
We conclude that the adverse credibility determination rests upon substantial evidence. The IJ provided specific, cogent reasons for concluding that Tenzin’s testimony lacked credibility. As the BIA summarized: although Tenzin “testified that he lived in the monastery from 1994 until 2002, a household registry ... indicates that he was living at his parents’ house in June 2000” and “lists his place of employment as ‘Second Village, Gyama Town, Medo Gungkar County, Tibet,”’ Because Tenzin’s identity as a monk is critical to his application, these apparent conflicts go to the “heart” of Tenzin’s claims.[1] See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir.2004).
In response, Tenzin argues that the IJ’s determination improperly rested upon unsupported speculation. Specifically, Ten-zin claims that the IJ should have accepted his testimony explaining that: (1) the household registry document indicates his status as a member of his family, but does not address whether he lived with his family or in a monastery; and (2) being a monk is not considered employment in China, so the household registry document does not describe him as a monk. Tenzin contends that when the IJ declined to accept these explanations, the IJ was improperly speculating as to the meaning of the household registry document.
We disagree. Tenzin’s testimony may offer one plausible interpretation of the document. However, the IJ need not have accepted Tenzin’s unsupported interpretation because it is not consistent with the face of the document itself. The registry document refers repeatedly to “residency registration” and indicates that it is “used ... to investigate and check the residency of the relevant residents.” A.R. 195. Given the plain meaning of the word “residency,” the IJ logically concluded that the registry document indicates that Tenzin resided with his family during the very time that he testified to residing full-time in a Tibetan monastery. See A.R. 201. The IJ’s interpretation of the document is reasonably grounded in the document’s plain language and does not rest upon mere speculation.
Tenzin bore the burden to establish the elements of his claims.[2] Tenzin failed to meet that burden. He offered only his own testimony to contradict the plain language of the household registry document.[3] Without evidence substantiating his interpretation, and given the absence of any additional evidence in the record corroborating Tenzin’s alleged status as a monk, there is substantial support in the record for the IJ’s conclusion that the *824 household registry document undermined Tenzin’s credibility.
B.
Tenzin also argues that the IJ erred by concluding that Tenzin should have produced evidence to corroborate his identity as a monk. A failure to provide corroborating evidence may undermine an applicant’s case where: (1) the IJ identifies facts for which it is reasonable to expect corroboration; (2) the applicant fails to corroborate; and (3) the applicant fails to adequately explain the failure to corroborate. Chukwu v. Att’y Gen., 484 F.3d 185, 191-92 (3d Cir.2007). Even a credible applicant may be asked to provide evidence corroborating his testimony if it is reasonable to expect the applicant to do so. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir.2001).
We conclude that the IJ’s request for corroboration in this case was reasonable in light of the conflicting evidence concerning Tenzin’s identity as a monk. The IJ suggested that Tenzin reasonably should have provided evidence from either the monastery or from his family members concerning his monkhood. When questioned about the lack of corroborating evidence, Tenzin did not provide a convincing explanation for its absence.[4] See Chukwu, 484 F.3d at 191-92.
III. Conclusion
For the foregoing reasons, we will deny the petition for review.

. Because Tenzin filed his asylum application in 2004, the REAL ID Act, effective May II, 2005, does not apply to his claims. See 8 U.S.C. § 1158(b)(1)(B).

. To prevail on his asylum claim, Tenzin bore the burden to establish that he suffered past persecution or has a well-founded fear of future persecution in China. See Gao v. Ashroft, 299 F.3d 266, 272 (3d Cir.2002). To meet the more stringent standard for withholding of removal, Tenzin had to demonstrate a “clear probability” of future persecution — that he would "more likely than not” be persecuted in China. See INS v. Cardoza-Fonseca, 480 U.S. 421, 449-50, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Finally, for relief under the CAT, Tenzin bore the burden of proving through objective evidence that he would “more likely than not” face torture in China. See Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir.2004).

.Indeed, at the hearing before the IJ, Ten-zin’s counsel conceded that he failed to provide any evidence supporting Tenzin's proffered interpretation of the meaning of the household registry document. See A.R. 187— 88.

. Tenzin stated only that it would have been too dangerous for his family in Tibet to provide a statement on his behalf. However, neither the BIA nor the IJ accepted this as an adequate response because Tenzin’s family members were able to forward the household registry document to him.